306 So.2d 812 (1975)
Annie E. BLOODWORTH, Plaintiff and Appellant,
v.
John BLOODWORTH, Defendant and Appellee.
No. 4837.
Court of Appeal of Louisiana, Third Circuit.
January 23, 1975.
Watson, Murchison, Crews & Arthur, William P. Crews, Jr., Natchitoches, for plaintiff-appellant.
Brittain & Williams by Jack O. Brittain, Natchitoches, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
Plaintiff, Annie Bloodworth, appeals the judgment rejecting her demand for a judicial separation on the grounds of cruel treatment, and granting defendant John Bloodworth's reconventional demand for a separation on the grounds of cruelty. She *813 also appeals the trial court's refusal to award alimony pendente lite.
The issues are factual and must be resolved on the basis of the credibility of the witnesses. In oral reasons dictated at the conclusion of the trial, the district judge stated he did not believe plaintiff and her witnesses. Instead, the trial judge believed the defendant and his impartial witnesses who testified the cause of the marital difficulties was plaintiff's continued relationship with another man, Ellis Green.
Plaintiff denied that she even knew a man named Ellis Green. She testified that defendant had physically struck her several times. In particular, that on Wednesday, December 12, 1973, she was at home and defendant came in and accused her of having been out somewhere. She says she had been to her mother's house, but she had returned home. Nevertheless, she testified defendant started beating her with a belt. She fought back and threw a metal object at him, which cut his face.
Plaintiff testified that after the fight on Wednesday night she went to her mother's house, but later returned and slipped in a window and slept in the rear bedroom, while her husband slept in the front bedroom. She says that on the next night she again slept in the rear bedroom and he in the front. On Friday, December 14, 1973, she moved out of the house and has not returned since.
Plaintiff's father and her sister testified that on the night after the fight they saw plaintiff, and she was bruised and cut. They both denied they even knew Ellis Green.
The defendant husband testified they had been having marital difficulties for about two years because of plaintiff's continued affair with Ellis Green. He denies ever having struck her and says that he only held her in self-defense. Defendant testified he had seen his wife with Ellis Green on many occasions both before and after the separation on December 14, 1973. He demanded she stop seeing Green. She admitted seeing Green and did not stop.
As to the incident on Wednesday night, December 12, 1973, defendant testified he had been out of town working on a construction job and returned home about 11:00 p. m. and found the lights on and the telephone off the hook and evidence that someone had just left the house hurriedly. Soon after that, he saw Ellis Green's white pickup truck pass in front of his house and go to the back of plaintiff's father's house where it stopped and plaintiff got out. Shortly thereafter, plaintiff came in the front door. He asked where she had been and she stated it was none of his business, and she was grown and she could go and do what she pleased. The fight ensued. Then Ellis Green phoned and plaintiff left the house and got in Green's pickup truck. They left and she didn't come back that night.
The defendant testified that the next day, Thursday, December 13, 1973, plaintiff returned and they slept together in the same bed that night. On Friday, plaintiff left and has not since returned.
Two disinterested witnesses corroborated the defendant husband as to plaintiff frequently being with Green. Lillian Young testified that she flagged traffic on highway construction jobs and she had seen plaintiff in a white pickup truck with a man identified to her by Gussie Williams, her friend, as being Eddie Green. Some of these occasions were in May of 1974. She said she had also seen plaintiff with Green at a laundramat and on another occasion on a Sunday night in Green's truck near a drugstore.
Gussie Williams testified that she also worked flagging traffic for the Highway Department. She said she knew Green and knew his white pickup truck and she had seen plaintiff with Green in the truck several times during April and May of 1974. Gussie was with Lillian Young on the occasion when they saw them together near the drugstore at night.
*814 The trial judge evaluated this conflicting testimony as follows:
"This presents the Court with nothing more than a factual situation. I don't believe that the plaintiff is truthful in saying that she didn't have anything to do with Ellis Green. The plaintiff and her father and her sister all deny knowing anything having to do with Ellis Green. However, we have two witnesses here who are not related to either of these parties, both testifying that they saw plaintiff with Ellis Green. Therefore, it is my opinion that there should be judgment in favor of John Bloodworth and against Annie Bloodworth, granting to him a legal separation."
An appellate court must give great weight to factual conclusions of the trier of fact. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, Canter v. Koehring Company, La., 283 So.2d 716 (1973).
In the present case there is clearly a reasonable evidentiary basis to support the trial judge's decision to discredit the testimony of the plaintiff and to accept that of the defendant husband. Under defendant's testimony, as corroborated by the two impartial witnesses, the acts of the wife constituted mental cruelty justifying a judgment of separation in favor of the husband. In Carriere v. Carriere, 147 So. 2d 668 (La.App. 3rd Cir. 1962), we held that the conduct of the husband in persistently absenting himself from home without explanation and under circumstances giving rise to a suspicion that he was involved with another woman, was sufficient grounds for a separation on the grounds of mental cruelty. In Gallagher v. Gallagher, 190 So.2d 916 (La.App. 2d Cir. 1966), the court held that the husband's conduct in consistently absenting himself from the wife and from the matrimonial domicile, in engaging in social drinking with other women and in being cold and indifferent toward his wife, constituted mental cruelty.
In the present case, the plaintiff wife had been going out with Ellis Green for a period of about two years. Defendant asked her to stop seeking Green, but she refused and continued the affair. She saw Green frequently without defendant's knowledge and under circumstances which reasonably led the defendant to believe that she and Green were engaged in an illicit relationship.
Counsel have not briefed the effect of any possible reconciliation which might have occurred on the night of Thursday, December 13, 1973. Of course, if as defendant testified, the parties actually slept together, there was a reconciliation, and the plaintiff wife could not urge as grounds for her demand for separation any prior acts of cruelty. There is no evidence of any acts of cruelty by the husband after the reconciliation. On the other hand, the husband testified that after the reconciliation he saw plaintiff with Ellis Green on several occasions, and this testimony is corroborated by the two disinterested witnesses. This continued affair with Ellis Green after the reconciliation constituted new grounds for separation, as to which the evidence of prior relationships was admissible for the purpose of corroboration, LSA-C.C. Article 153; Maynor v. Maynor, 234 So.2d 426 (La.App. 1st Cir. 1970).
The final issue concerns the trial judge's rejection of plaintiff's demand for alimony pendente lite. The plaintiff wife testified she works for the public schools as a home visitor in the "Follow Through Program". She earns a gross of $399 per month and take-home pay of $307 per month. At the time of the trial, she was living in a rent house, apparently owned by plaintiff and defendant, and was not paying any rent. She listed total living expenses of $610 per month.
The defendant husband is a cement worker on construction jobs and earns an *815 average gross wage of $500 to $600 per month. He claims monthly expenses of $702.
Under LSA-C.C. Article 148 the wife is entitled to alimony pending the suit for separation, proportioned to her needs and the means of her husband. She is entitled to this alimony regardless of whether she is at fault in the separation. The trial judge indicated he rejected the wife's demand for alimony pendente lite because she was at fault in the separation. This is error. Under the circumstances of this case we find the wife should receive $75 per month as alimony pendente lite.
For the reasons assigned, the judgment appealed is amended to award the plaintiff wife the sum of $75 per month as alimony pendente lite under LSA-C.C. Article 148. Otherwise the judgment is affirmed. All costs of this appeal are assessed against the defendant husband, as head and master of the community.
Affirmed as amended.
MILLER, J., concurs in part, dissents in part and assigns written reasons.
MILLER, Judge (concurring in part, and in part dissenting).
I concur in the holding that the trial judge committed manifest error in withholding alimony from the wife, and agree to the modification of the trial court's decree.
The trial court's factual findings are quoted in full in the majority opinion. Husband was granted a judicial separation (from his wife whose work required her to visit in other people's homes) because his wife was not truthful and she was seen with another man. It is submitted that the trial court was manifestly wrong in awarding a separation from bed and board to the husband.
The suit was instituted by the wife seeking a separation grounded on "cruelty." Husband reconvened as an afterthought immediately before the trial. His sole allegation of fault was that his wife was "keeping company with another man." Husband did not allege "cruel treatment," he did not testify that his wife was cruel to him, and the trial judge's oral reasons for judgment did not find cruel treatment. If a spouse commits grounds for a legal separation when he or she is seen in the company of one of the other sex, not many marriages could survive an attack in the courts.
Furthermore, husband never alleged, nor did he attempt to prove that the wife's conduct rendered their living together as man and wife "insupportable." This is required by LSA-R.C.C. art. 138.
I submit that husband failed to state a cause of action under LSA-R.C.C. art. 138. Section 3 of this article requires that "such ill-treatment (be) of such nature as to render their living together insupportable." That husband did not think the facts would support such an allegation is verified by his failure to reconvene until shortly before the trial.
Assuming that husband did state a cause of action, I further submit that husband failed to sustain his burden of proof. The only testimony which could possibly be construed as supporting a finding that wife has "keeping company" or having an "affair" with Ellis Green, was the testimony of the husband alone. And his testimony to that effect is detailed only as to times before the parties separated. The husband alleged in his answer and judicially confessed in his trial testimony that the parties lived together until December 15, 1973. The husband's testimony that he saw his wife with Green after they lived together on December 15, 1973 was limited to his testimony at Tr. 46 that he had seen them together since that time a "lot of times."
Lillian Young's testimony impressed the trial judge. She testified at Tr. 58 that she didn't know Ellis Green, and that she first heard his name on the day of trial. *816 Nevertheless she identified a man who drives a school bus and a white pick-up truck, and she was sure that Ellis Green was the man she had seen with defendant's wife. She was out "flagging" on Highway 6 and "saw them pass together. That was a while back. I don't know exactly when, but I saw her pass, because I know her well. I saw them down on Lee Street, over towards the laundramat." The time of this viewing was "before Christmas." Tr. 54, 5. Ms. Young also testified that she saw Green let defendant's wife out of his pick-up truck one Sunday night on Front Street. No date was given. Tr. 59. Ms. Young did not suggest that anything improper occurred at any time.
Ms. Gussie Williams testified that she knew Ellis Green (Tr. 59); that she and Ms. Young saw defendant's wife and Green together "about the first of December or the last part of November of 1973" in front of the laundramat (Tr. 60); that she also saw them while she was working as a "spotter" on a highway crew (Tr. 60); that she also saw them on the third Sunday night in May when defendant's wife was getting out of Green's truck near the Don Theater (on Front Street) (Tr. 61).
Excluding all testimony relating to events which occurred before the December 15, 1973 reconciliation (which husband's testimony established), this separation from bed and board rests on husband's testimony that he has seen his wife and Green together a lot of times after Decemer 15, and the two "independent" witnesses testimony that they saw them once together in his truck out on the highway in April or May of 1974. The record is devoid of testimony that defendant's wife was acting improperly or that she was doing anything other than acts required by her employment with the School Board.
The majority's statement of law is correct, but it is not applicable. Prior relationships between a spouse and another are admissable for corroboration purposes. But there must be "new grounds." New grounds means grounds which taken alone would sustain the granting of a separation from bed and board under art. 138.
I cannot agree that "cruel treatment" has been proved by husband's testimony that he saw his wife with another man a "lot of times" and by two "independent" witnesses testimony that they saw the wife with the other party in a pick-up truck on a highway. This is particularly true when we find not one word of verification that wrongful or immoral acts were observed. Husband himself never testified that he observed wrongful or immoral acts.
Since the trial judge found the wife's testimony unworthy of belief, I agree that her claim for a legal separation was properly denied. The proper judgment would be a dismissal of both claims.
I respectfully dissent from that part of the judgment awarding husband a judicial separation.
Concurring, in part; in part, dissenting.