349 So.2d 441 (1977)
Walter Jerald HELMS, Defendant-Appellant,
v.
Joyce Edna HELMS, Plaintiff-Appellee.
No. 6104.
Court of Appeal of Louisiana, Third Circuit.
August 3, 1977.
Charles S. King, Lake Charles, for defendant-appellant.
Raleigh Newman, Lake Charles, for plaintiff-appellee.
Before CULPEPPER, GUIDRY and FORET, JJ.
FORET, Judge.
This appeal arises from a judgment of divorce granted by the trial court in favor of Joyce Edna Helms, and against Walter Jerald Helms, who has perfected this appeal.
Walter Jerald Helms obtained a judgment of separation from his wife, Joyce Edna Helms, in this suit in the Fourteenth Judicial District Court, on June 8, 1976. On October 27, 1976, in this same suit, Joyce Edna Helms filed a petition against Walter Jerald Helms, seeking a judgment of divorce on the grounds of adultery. By supplemental and amended petition, Joyce Edna Helms also made other demands against Walter J. Helms; the latter then added to his original petition and reconvened against Joyce Helms for a money judgment for money loaned to her after their legal separation. However, the only *442 issue before this Court is the matter of the divorce.[1]
Defendant-appellant, Walter Jerald Helms, on appeal, contends that the sole issue and question of law involved herein is whether the trial court applied the proper standard of proof of adultery, i. e. that there was sufficient evidence to exclude all reasonable hypotheses other than that of guilt of adultery.
In her petition, appellee alleges that defendant-husband, on the nights of October 15 and 16, 1976, committed acts of adultery with Nona Allison in the latter's apartment in Lake Charles, Louisiana. To substantiate those allegations, four witnesses testifiedappellee, Joyce Edna Helms; Agnes Thompson, appellee's mother; Dorothy Hebert, appellee's aunt; and Linda Foy, a close friend of appellee's. They all swore under oath that they conducted a constant surveillance of the apartment of Nona Allison, the alleged paramour, between the hours of 3:30 o'clock P.M. Friday, October 15, 1976, and 11:00 o'clock A.M. Saturday, October 16, 1976, and between the hours of 9:30 o'clock P.M. Saturday, October 16, and 6:30 o'clock A.M. Sunday, October 17. They stated that each night, upon arrival at the apartment house, by knocking loudly and continuously for a reasonably long period of time, they sought entrance into Nona Allison's apartment; and that, after no response thereto was made, they positioned themselvesDorothy Hebert and Linda Foy in an automobile parked in the street immediately in front of the apartment building, and Agnes Thompson and appellee in an automobile situated in the rear of the apartment buildingso that they could view those who entered and/or exited from the building. (Dorothy Hebert and Linda Foy were positioned so that they could easily view those who made use of the only entrance to the apartment building.) They all testified that at no time did they leave their positions.
The findings of the first surveillance were as follows: at 4:38 o'clock P.M., Nona Allison arrived at her apartment. Approximately two hours later, at 6:32 o'clock P.M., defendant, Walter Jerald Helms, entered the apartment. Between those times and 11:00 o'clock A.M. October 16, no one entered, or left, the apartment.
The October 16-17 surveillance also revealed that defendant stayed overnight in the apartment of Nona Allison. All of appellee's witnesses testified that at 11:50 o'clock P.M. Walter Jerald Helms and Nona Allison entered the latter's apartment; and that between the hours of 11:50 o'clock P.M., October 16, and 6:30 o'clock A.M., October 17, no one else entered or left the apartment. Appellee and Agnes Thompson stated that, while the lights in the master bedroom of the apartment were illuminated, through the curtains covering a window of that room, they could see the outlines or silhouettes of two persons, of the opposite sex, undressing, getting into bed together, and putting the lights out.
Fourteen witnesses testified on behalf of defendant-appellant. The testimony of Nona Allison, Charlene Wimberly, Nona's sister, and appellant himself was in direct conflict with the testimony of plaintiff's witnesses insofar as the times in which Nona and Jerald entered the apartment on the two nights in question and insofar as they stated that Nona and Jerald attended a birthday party on Friday, October 15, and a McNeese football game and alumni dance on Saturday, October 16. The above witnesses for the defendant, and defendant himself, definitively stated that Jerald Helms stayed overnight in Nona's apartment on October 15 and 16, but that at no time ever did Jerald and Nona commit an act of adultery; and that Nona and Charlene slept in the same bed and Jerald slept on the couch in the living room.
Nona and Jerald testified that they arrived at the home of Mr. Jerry Wayne Bruno and his wife Peggy at 8:30 o'clock P.M. Friday, October 15, to attend a birthday *443 party in honor of Peggy, and that they departed therefrom at about 12:30 o'clock A.M. Such testimony was corroborated by that of Jerry Wayne Bruno, Peggy Bruno, Mark Collins, and Mr. & Mrs. Rufus Nelands, the latter three of which were guests at the party.
Nona and Jerald stated that they left the apartment a little past 7:00 o'clock P.M. Saturday, October 16, to attend a McNeese football game. That statement was substantiated by that of Jerry and Peggy Bruno, who testified that they were spectators along with Nona and Jerald. The latter two also testified that they attended the McNeese alumni dance thereafter and left its situs, the Civic Center, between 1:00 and 2:00 o'clock A.M. James and Betsy Robinson, Ronald Hayes, Sam Monticello, and Jeffery and Brenda Boudreaux stated that Nona and Jerald attended the dance and that they sat at a table with them.
In his oral reasons for judgment (Tr., pg. 420-424), the trial judge stated that he closely scrutinized the testimony of all of the witnesses and that he placed great weight and credibility upon the testimony of plaintiff's witnesses. This Court, in reviewing the factual and legal conclusions of the trial court, is bound by the rule of law succinctly enunciated in the case of Canter v. Koehring Co., 283 So.2d 716, 724 (La. 1973):
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review, the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Citations omitted.
Defendant-appellant Walter Jerald Helms contends that the trial judge did not apply the proper burden of proof in his evaluation of his case. We cannot say that the trial court did not apply the burden of proof required in adultery cases, that is, evidence so convincing that it excludes all reasonable hypotheses other than that of guilt of adultery. We must presume that the trial court did apply the proper rule of law, for we have nothing from the record to indicate otherwise. The learned trial judge is a capable and experienced trial judge, and absent a contrary showing, we must presume that he applied the proper rule of law to the evidence in this case.
Adultery is rarely susceptible of proof with any irrefutable degree of certainty. All of the surrounding circumstances must be considered, and in the majority of cases adultery is proven by circumstantial evidence. From a review of this record, certainly there is strong and convincing evidence sufficient to support the trial court's finding. For example, defendant-appellant definitely admitted to having spent two nights at Nona Allison's apartment. A stronger case of circumstantial evidence could hardly ever be structured and presented. Without going into details about the inconsistencies in the testimony of defendant-appellant's witnesses, of which the record reveals there are many, we will merely state that after a careful reading of the record, we conclude that there exists a reasonable evidentiary basis for the judgment of the trial court. Accordingly, we affirm its judgment.
All costs of this appeal are assessed against defendant-appellant.
AFFIRMED.
NOTES
[1] For the reason that the petition for divorce was filed in the same suit as was the suit for legal separation, Walter Jerald Helms is herein referred to as defendant-appellant, and Joyce Edna Helms is referred to as plaintiff-appellee.