436 So.2d 1352 (1983)
Dorothy S. SLAUGHTER, Plaintiff-Defendant-in-Reconvention-Appellee,
v.
James P. SLAUGHTER, Defendant-Plaintiff-in-Reconvention-Appellant.
No. 83-154.
Court of Appeal of Louisiana, Third Circuit.
September 7, 1983.
Rehearing Denied September 29, 1983.
Gold, Little, Simon, Weems & Bruser, Donald Sharp, Alexandria, for defendant-plaintiff-in-reconvention-appellant.
Trimble and Associates, Elizabeth E. Foote, Alexandria, for plaintiff-defendant-in-reconvention-appellee.
Before GUIDRY, STOKER, DOUCET, YELVERTON and KNOLL, JJ.
DOUCET, Judge.
James P. Slaughter appealed a judgment awarding permanent alimony in the amount of $300 per month to his former wife, Dorothy S. Slaughter, on the basis that she is guilty of fault which precludes her from receiving permanent alimony. Mrs. Slaughter answered the appeal asking for an increase in the award to $500 per month. We reverse.
Mrs. Slaughter filed suit on October 28, 1980 seeking a separation of bed and board on the grounds of cruel treatment and constructive abandonment. Mr. Slaughter reconvened seeking a separation alleging his wife's relationship with another man constituted *1353 cruel treatment. He subsequently amended his reconventional demand to ask for a divorce on the basis of having lived separate and apart in excess of one year. Mrs. Slaughter amended her petition to ask for permanent alimony.
The judgment of absolute divorce based on the parties having lived separate and apart for one year was not contested at trial and is not contested in this appeal. The issues presented on appeal are whether Mrs. Slaughter was free from fault in the breakup of her marriage so that she may be entitled to permanent alimony and, if so, whether the amount awarded by the trial court is sufficient.
The Slaughters were married in 1947. All three of their children had reached the age of majority by the time this litigation began. The physical separation occurred on October 26, 1980, when Mr. Slaughter accused his wife of infidelity and ordered her from the family home. Mr. Slaughter's accusations were based on Mrs. Slaughter's relationship with a Mr. Leckie. It is the nature of this relationship which is the real controversy in this matter. Mrs. Slaughter claims that Mr. Leckie is simply a friend. Mr. Slaughter, while admitting that the evidence is insufficient to prove adultery, claims that the nature of the relationship, including clandestine meetings between Mrs. Slaughter and Mr. Leckie, is sufficient to constitute mental cruelty. He claims that the relationship caused the breakup of the marriage, thus, Mrs. Slaughter is not free from fault.
The record indicates the controversial meetings between Mr. Leckie and Mrs. Slaughter began in the summer and fall of 1978, more than two years before the Slaughters physically separated although Mr. Leckie had been a friend of the family for years. These meetings were testified to by different witnesses and most of them were admitted to by Mrs. Slaughter.
Mr. Leckie's daughter, Debbie Bowen, and his former employee, Addie Chambers, testified that during 1978 Mrs. Slaughter came to the Indian Inn, a service station and restaurant run by Mr. Leckie, several times a week, sometimes as often as every day. She would buy gas there, Mr. Leckie would sometimes service her car, and she would sometimes have a soft drink with him. According to Mrs. Chambers, once Mr. Leckie left the Indian Inn, she had not seen Mrs. Slaughter there.
There was also testimony concerning a visit made by Mr. Leckie and Mrs. Slaughter to Iowa to see the Slaughters' oldest son, Michael, his wife and son. The trip was taken in September of 1978 at a time when Mrs. Slaughter had been suffering from high blood pressure and was advised not to travel alone. Both Mr. and Mrs. Slaughter testified that Mr. Slaughter refused to go to Iowa with her.
Mr. Leckie flew out of the Monroe airport and Mrs. Slaughter flew out of Alexandria "for the purpose of keeping down gossip" according to Mrs. Slaughter. In Iowa, Mrs. Slaughter allegedly stayed with her son and his family and Mr. Leckie stayed at a hotel. Michael testified that he had invited Mr. Leckie to come to Iowa for a visit. A picture of Mr. Leckie and Mrs. Slaughter taken on the Iowa trip standing side by side, each with an arm around the other, was introduced into evidence by counsel for Mr. Slaughter. Mrs. Slaughter admitted that the picture had been taken on Sunday afternoon before Mr. Leckie left Iowa. She also admitted she knew that her husband would not approve of the relationship she had with Mr. Leckie.
Other evidence of meetings between Mr. Leckie and Mrs. Slaughter includes testimony from her second son, Russell, and his wife, Pat. One instance was in a catfish restaurant in which Mrs. Slaughter, Russell and Pat were eating dinner. Mr. Leckie came in and talked to them for a time and then left. It appeared to Russell that the meeting was prearranged and it made him feel uncomfortable.
Another incident occurred at a pizza parlor in Alexandria. The circumstances of this incident are somewhat disputed. Mrs. Slaughter and Pat were eating dinner when Mr. Leckie came in. Pat testified that Mrs. Slaughter asked her to go somewhere for a few hours and pick her up later at Mr. *1354 Leckie's house. Pat stated further that when she picked up Mrs. Slaughter, the couple kissed goodbye and said they loved each other.
Mrs. Slaughter denies that she left with Mr. Leckie and denies ever having acted in a romantic manner towards Mr. Leckie. She claims that she left the pizza parlor with Pat just as she had come and that this encounter was by chance just as the one at the catfish restaurant was.
Other testimony involved a catfish fry at Mr. Leckie's house. Russell and Pat were invited, as was Mrs. Slaughter. On this occasion Mr. Leckie gave Mrs. Slaughter a hand gun and the two were alone as they walked into the woods for approximately half an hour to practice shooting.
Mrs. Slaughter's younger son, Darrel, testified that while his mother was visiting him in Norfolk, Virginia, Mr. Leckie called to speak with her.
On the evening of October 26, 1980, Mr. Slaughter finally confronted his wife about her relationship with Mr. Leckie and ordered her to vacate the home.
Fault which will preclude an award of permanent alimony must be such conduct which would entitle one spouse to a separation or divorce. Adams v. Adams, 389 So.2d 381 (La.1980). When a spouse claims entitlement to permanent alimony, he or she bears the burden of proving freedom from fault in the breakup of the marriage. La.C.C. Art. 160; Boudreaux v. Boudreaux, 407 So.2d 1363 (La.App. 3rd Cir. 1981); Moore v. Moore, 393 So.2d 822 (La. App. 2d Cir.1981); Lovell v. Lovell, 386 So.2d 1063 (La.App. 3rd Cir.1980); Bell v. Bell, 368 So.2d 777 (La.App. 2d Cir.1979); Perrilloux v. Perrilloux, 424 So.2d 483 (La. App. 5th Cir.1982). The meaning of fault within the context of La.C.C. Art. 160 is not synonymous with being totally blameless in the marital discord. To constitute fault, a spouse's misconduct must be serious and proximate cause of the separation. Pearce v. Pearce, 348 So.2d 75 (La.1977). Adultery can clearly constitute fault, however, the burden of proof in this regard can be extremely difficult. Nevertheless, intimate relationships with another, which are not proven adulterous, can constitute cruel treatment barring alimony.
In Boudreaux v. Boudreaux, supra, this court addressed the wife's burden of proof, vis-a-vis entitlement to alimony, where the husband's allegation of adultery was not substantiated by evidence such as would exclude any other reasonable hypothesis regarding her relationship with another man. We stated therein:
"LSA-C.C. Article 160 provides that a spouse is entitled to alimony only when he or she has not been at fault. In Pearce v. Pearce, 348 So.2d 75 (La.1977), the Louisiana Supreme Court stated:
"... the word `fault' contemplates conduct or substantial acts of commission or omission by the wife violative of her marital duties and responsibilities. A wife is not deprived of alimony after divorce simply because she was not totally blameless in the marital discord. Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Davieson v. Trapp, 223 La. 776, 66 So.2d 804 (1953); Breffeilh v. Breffeilh, 221 La. 843, 60 So.2d 457 (1952); Adler v. Adler, 239 So.2d 494 (La.App. 4th Cir.1970).
"To constitute fault, a wife's misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958). The question of a wife's fault under the statute providing for alimony when a wife has not been at fault and has not sufficient means for her support is a factual one. Morgan v. Morgan, 260 So.2d 336 (La. App. 4th Cir.1972). We have recognized that a trial court's findings of fact on the issue of a wife's `fault' will not be disturbed on appeal unless found to be manifestly erroneous. Williams v. Williams, 215 La. 839, 41 So.2d 736 (1949); Fletcher v. Fletcher, 212 La. 971, 34 So.2d 43 (1948)."
Fault for purposes of permanent alimony preclusion is synonymous with the fault grounds for separation and divorce under LSA-C.C. Articles 138 and *1355 139. Adams v. Adams, 389 So.2d 381 (La.1980); Smith v. Smith, 216 So.2d 391 (La.App. 3rd Cir.1968). The wife bears the burden of proving her freedom from fault in order to be entitled to alimony following divorce. Brannon v. Brannon, 362 So.2d 1164 (La.App. 2d Cir.1978); Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959).
We recognize the heavy burden of proof placed on one alleging adultery. The facts and circumstances must be such as to lead fairly and necessarily to the conclusion that adultery has been committed as alleged in the petition, i.e., the proof must be so convincing as to exclude any other reasonable hypothesis but that of guilt of adultery. Helms v. Helms, 349 So.2d 441 (La.App. 3rd Cir.1977); Hayes v. Hayes, 225 La. 374, 73 So.2d 179 (1954). We find it unnecessary, however, to reach the issue of the sufficiency of Mr. Boudreaux's proof of adultery. Even if Mrs. Boudreaux was not guilty of adultery, the evidence clearly shows she was guilty of alimony-barring fault."
See also: Carriere v. Carriere, 147 So.2d 668 (La.App. 3rd Cir.1962), wherein we held that the conduct of the husband in persistently absenting himself from the home without explanation and under circumstances giving rise to suspicion that he was involved with another woman, was sufficient grounds for separation on the grounds of mental cruelty; and Sklar v. Sklar, 387 So.2d 1308 (La.App. 1st Cir.1980).
The evidence presented at trial shows that Mrs. Slaughter had a very close relationship with a man although she knew her husband would be upset if he knew of their activities together. The meetings between Mrs. Slaughter and Mr. Leckie were frequent and sometimes clandestine. She persisted in conduct which eventually led Mr. Slaughter to believe his wife and Mr. Leckie were engaged in a illicit relationship. Under these circumstances Mrs. Slaughter is precluded from recovering permanent alimony.
For the reasons set forth hereinabove, the judgment of the trial court awarding permanent alimony is reversed. Costs of these proceedings are assessed one-half to each party.
REVERSED.
STOKER, J., dissents and assigns written reasons.
GUIDRY, J., dissents for reasons assigned by STOKER, J.
STOKER, Judge, dissenting.
With respect I dissent from the holding of the majority opinion in this case. I agree with the majority's statement of facts. However, after carefully considering the testimony in this case, I cannot say that the trial judge was clearly wrong in finding Mrs. Slaughter free from fault. In his reasons for judgment the trial judge stated:
"The Court is left with an abiding conclusion that the marriage relationship between Mr. and Mrs. Slaughter had deteriorated to the point that Mr. Slaughter actually welcomed an opportunity to terminate the relationship."
I believe this evaluation is correct.
Fault which will preclude an award of permanent alimony must be such conduct which would entitle one spouse to a separation or divorce. Adams v. Adams, 389 So.2d 381 (La.1980). The determination of fault is a factual one which will not be disturbed on appeal absent clear error. Boudreaux v. Boudreaux, 407 So.2d 1363 (La.App. 3rd Cir. 1981).
Although I am well aware of cases in which the wife's relationship with another man was sufficient to constitute fault, even though adultery could not be proved, I do not believe that such a result is dictated here. Most of the cases in which fault was found dealt with a daily continuing relationship between the wife and another man under circumstances which were extremely suspect, but falling just short of the difficult burden of proof for adultery. See Boudreaux v. Boudreaux, supra; Sklar v. Sklar, 387 So.2d 1308 (La.App. 1st Cir.1980); Bloodworth v. Bloodworth, 306 So.2d 812 (La.App. 3rd Cir.1975).
*1356 The evidence at trial shows only that Mrs. Slaughter had a close friendship with a man who was also a close friend of her father's. The only direct evidence of meetings between them occurred more than two years before the Slaughters' physical separation. The trial court was correct in finding Mrs. Slaughter free from fault for the purpose of receiving alimony.
I would affirm the trial court which would include a rejection of Mrs. Slaughter's demands on appeal asserted in her answer to the appeal seeking an increase in permanent alimony. Accordingly, I respectfully dissent.