462 So.2d 302 (1985)
Charles DERBES, Sr., Plaintiff-Appellee,
v.
Marilyn Milburn DERBES, Defendant-Appellant.
No. 83-1143.
Court of Appeal of Louisiana, Third Circuit.
January 7, 1985.
*303 Cole & Guidry, J.N. Prather, Jr., Lafayette, for defendant-appellant.
Pucheu, Pucheu & Pucheu, Jacque B. Pucheu, Sr., Eunice, for plaintiff-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
The trial judge granted a divorce to husband on the grounds of living separate and apart from wife for one year, and the judge denied wife's claim for alimony, finding that she had not carried her burden of proving that she was free from fault. Wife appeals the denial of alimony, and she also contends that her appeal should have suspended execution of the judgment below. We find no error. We affirm.
Charles Derbes, Sr. and Marilyn Milburn Derbes were married in 1950. Four children were born of the marriage, all of whom have obtained the age of majority. Charles is a pharmacist; Marilyn is unemployed. It is not seriously disputed by either party that, after the children were raised and had left the family home, the marital relationship between Mr. and Mrs. Derbes began to deteriorate.
Charles instituted the divorce proceedings in this case. He filed his action for divorce under the provisions of Louisiana Revised Statute 9:301, alleging that he and his wife had lived separate and apart for more than one year. Marilyn answered and filed a reconventional demand in which she sought a divorce based on Charles' alleged abandonment of the marital domicile, and Charles' alleged cruel treatment of her. Charles answered the reconventional demand with allegations that Marilyn had caused him to leave the marital domicile because she had consistently refused to *304 engage in sexual intercourse, moved out of the marital bedroom, refused to sleep with her husband, and, in effect, refused to have anything to do with her husband.
Marilyn's rule for alimony pendente lite was heard on May 13, 1983. She was awarded $600 per month alimony pendente lite in a judgment signed on May 31, 1983.
The divorce was tried on the merits on June 28, 1983. Both parties presented evidence tending to show that Charles was entitled to a divorce on the basis of living separate and apart from Marilyn for more than one year. However, the "fault" dispute, first introduced into the proceedings by Marilyn's reconventional demand, resulted in a large amount of contradictory testimony, chiefly by the two parties themselves.
Charles told the story of a man whose wife had grown increasingly cold and unresponsive to his sexual overtures. He stated that he and his wife had had sexual intercourse perhaps only six times during the last six years of the marriage, and not at all during the last year. He testified that he rarely verbally asked his wife to have sex with him, and his wife would not actually say "no." Rather, Charles related, he often would become affectionate, sometimes carressing his wife or otherwise indicating his desires, and his wife would reproach his intimacies with facial expressions, gestures, or simply her unresponsiveness. As noted by the trial judge, "for two people who had lived together for 32 years, communications take on many forms...." Charles stated that Marilyn wanted no part of his (or any) social life. According to Charles, Marilyn refused to go on business trips with him, and would not even leave their house to go to a restaurant. He claimed that their conversations withered quickly, because she did not want to talk to him. Charles set forth Marilyn's routine as drinking coffee, chain-smoking, working crossword puzzles, and watching television. He said she was uninterested in and refused to do anything else.
Marilyn's version of the demise of her marriage was different. She stated that she only refused to have sex with her husband on one occasion, and that he was drunk at the time. Her explanation for the disappearance of her and her husband's sex life was that he was no longer interested in sexual relations with her, and he no longer approached her for sex. Marilyn testified that an arthritic condition pretermitted her participation in the type of social life in which her husband was involved, particularly the business/pleasure trips that he took with other pharmacists. Marilyn admitted moving from the marital bedroom, but she explained that she did this only after Charles said he was going to move into another room. According to Marilyn, she moved so that Charles could have the room with the telephone and also obtain his desire that they sleep in separate rooms. Marilyn said that after Charles moved into another house, she was still initially willing to "take him back." She claimed that after the separation, Charles visited one day and, after having sexual intercourse, they "vaguely" discussed resuming the marital relationship. (Charles remembered the visit, but denied having sex with Marilyn or discussing their marriage.) Marilyn stated, however, that Charles began seeing another woman sometime after the separation, and that after she discovered this, she no longer wished to reconcile with her husband.
The trial judge entered written reasons for his decision. He found, first, that Charles was entitled to a divorce on the basis of living separate and apart from his wife for one year. Second, he found that Marilyn had not carried her burden of proving that she was free from fault and, therefore, that Marilyn was not entitled to permanent alimony after the divorce. On the issue of fault, the trial judge focused upon Marilyn's alleged refusal to have sex with her husband. The judge believed that Marilyn had, in fact, unreasonably refused to meet the reasonable and normal sexual needs of her husband. The judge found that the fault on the part of Marilyn was of sufficient magnitude to constitute "legal" fault under the law of this state.
*305 Judgment was entered dissolving the marriage of Mr. and Mrs. Derbes, and Mrs. Derbes' claim for permanent alimony was denied.
Marilyn Milburn Derbes filed a motion for a suspensive appeal, in which she sought review of "the fault issues, burden issues, and post-divorce alimony issues...." The trial judge, noting that appellant did not question the granting of a final divorce on the grounds of living separate and apart for one year, but instead sought review of his fault judgment denying appellant alimony, changed the wording of appellant's motion so that the motion requested a devolutive, rather than suspensive, appeal.
The appeal before this court presents two issues: (1) whether a suspensive appeal should have been allowed in this case and (2) whether the trial judge erred by denying appellant permanent alimony on fault grounds.

SHOULD APPELLANT HAVE BEEN ALLOWED TO SUSPEND JUDGMENT DURING THE PENDENCY OF THIS APPEAL?
The primary difference between a suspensive appeal and a devolutive appeal is that a suspensive appeal suspends the execution of the judgment of the trial court until the appeal is decided, whereas a devolutive appeal allows the judgment of the trial court to be executed during the pendency of the appeal. In domestic relations cases, an appeal from a judgment of divorce must be suspensive. La.Code Civ. Proc. art. 3942. A divorce judgment ends a marriage, it substantially alters the status of the parties. For example, the former husband or wife may remarry after a final divorce judgment has been entered. The policy behind allowing only suspensive appeals from divorce judgments is apparent: the execution of a divorce decree during the pendency of an appeal could cause the parties to take action (e.g., remarriage) based on their status as determined by the trial court that could prove to be illegal or at least burdensome should the appellate court reverse the trial court. On the other hand, judgments awarding alimony must be appealed devolutively. La.Code Civ. Proc. art. 3943. Again, the rule is grounded in sound policy. In Louisiana, if an ex-spouse passes the threshold requirement of proving his or her freedom from fault, permanent alimony is then based on the need of the claimant spouse for means to acquire the basic necessities of life. The legislature, through article 3943, disapproves the use of a suspensive appeal to deprive a deserving and needy former spouse of necessary support pending appeal. La.Code Civ.Proc. art. 3943 Comment (a).
In order to decide which provision governs this appeal, this court must determine the basis of and the actual issues presented by appellant's contentions on appeal. Clearly, appellant does not argue that the status determination made by the court belowi.e., the actual dissolution of the marriageconstitutes error. The divorce was granted on the grounds of living separate and apart for one year, and appellant does not contend that this determination is invalid or should not have been reached in this case. Rather, appellant questions factual and legal determinations made by the trial judge which relate to her claim for permanent alimony after divorce.
Admittedly, the wording of article 3943 could be read to limit the restriction to devolutive appeals only to judgments that actually award alimony in some amount. Here, appellant received no award. However, judicial interpretations of article 3943 have consistently held that its mandate of devolutive appeals and prohibition of suspensive appeals for judgments concerning permanent alimony applies whether permanent alimony is awarded or denied by the trial court. E.g., Malone v. Malone, 282 So.2d 119, 121 (La.1973); Donaldson v. Donaldson, 389 So.2d 1375, 1376 (La.App. 3d Cir.), writ denied, 394 So.2d 617 (La. 1980).
Appellant attempted to appeal suspensively so that no judgment in the case could be entered, and she could continue to receive *306 $600 per month alimony pendente lite until this court renders judgment. We note that the traditional policy underpinnings of article 3943, discussed above, have only a tenuous relevancy to cases in which alimony is denied, such as this case. However, we also note that drawing a distinction between cases in which alimony is awarded and those in which it is denied would create administrative difficulties for the courts of this state. Moreover, the evenhanded application of the rule of article 3943 to all alimony decisions promotes the fair treatment of both parties in these disputes: it is only equitable that a former spouse who is found not to be obligated to pay should enjoy the same procedural advantages that a former spouse who is found to be entitled to permanent alimony receives under article 3943.
The trial judge did not err by granting appellant a devolutive, as opposed to suspensive, appeal. Appellant is not entitled to suspend judgment on that portion of the decision of the lower court that she contests on appeal.

DID THE TRIAL JUDGE ERR BY DENYING APPELLANT'S CLAIM FOR PERMANENT ALIMONY ON FAULT GROUNDS?
Louisiana Civil Code article 160 governs awards of permanent alimony after divorce in this state. The threshold requirement for one who seeks an award of alimony under article 160 is that the prospective recipient "has not been at fault."[1] In divorces granted because the spouses have lived separate and apart for a year or more, "fault" is not determinative of the issue of the dissolution of the marriage. Fault only becomes an issue when a spouse claims permanent alimony under article 160. Thus, as noted by one commentator, "the parties to a potentially amicable divorce are judicially required to re-enter the combat zone." Comment, The Fault Preclusion to Post-Divorce Alimony in Louisiana, 57 Tul.L.Rev. 351, 374 (1982).
In adjudging whether the claimant spouse in a no-fault divorce is free from fault and therefore entitled to alimony based on need, a trial judge is faced with two seemingly contradictory legal standards. First, the jurisprudence places the burden of proving freedom from fault, and thus entitlement to alimony based on need, on the claimant spouse (here, Mrs. Derbes). E.g., Bruner v. Bruner, 364 So.2d 1015, 1017 (La.1978) (quoting Adler v. Adler, 239 So.2d 494, 496 (La.App. 4th Cir.), writ denied, 257 La. 168, 241 So.2d 530 (1970)); Smith v. Smith, 216 So.2d 391, 393 (La. App. 3d Cir.1968). Second, however, the jurisprudence enunciates the standard that fault on the part of the claimant spouse, in order to preclude alimony, must be of the same type and magnitude that would constitute grounds for a "fault" separation or divorce under Civil Code articles 138 and 139. E.g., Adams v. Adams, 389 So.2d 381, 383 (La.1980); Boudreaux v. Boudreaux, 407 So.2d 1363, 1365 (La.App. 3d Cir.1981). Thus, in the first instance, the law, in effect, presumes the claimant spouse is not free from fault, and therefore not entitled to alimony. The claimant spouse must prove, by a preponderance of credible evidence, the negative of fault his or her relative "innocence." However, the logical operation and interpretation of the second rule discussed above is that, in order for alimony to be denied because of the fault of the claimant spouse, the evidence presented at trial must show that the non-claimant spouse could have obtained a divorce or separation on fault grounds, even though a no-fault divorce is in fact sought, and therefore the claimant spouse is not free from fault and not entitled to alimony based on need.
*307 In order to decide this case, we need not resolve any perceived inconsistency between the several legal standards which govern proof of freedom from fault in claims for permanent alimony. In this case, the trial judge was presented with evidence that convinced him that appellant had not proved freedom from fault, and also that the fault of appellant constituted "legal" fault sufficient to entitle appellee to a divorce or separation on fault grounds. Clearly, however, the trial judge placed the primary burden of proof on appellant.
The fault examined by the trial judge was appellant's alleged refusal to meet the reasonable sexual needs of her husband. The judge accepted as substantially true that version of the facts offered by appellee. The trial judge applied the correct legal standard to "sex denial" as a fault issue in domestic relations cases. He noted that it is the duty of each spouse to meet the reasonable, normal sexual needs of the other spouse, and that persistent refusal to fulfill this marital obligation, when such refusal is unreasonable or unjustified, constitutes "cruel treatment" within the meaning of the fault provision of Civil Code article 138(3). See, e.g., Mudd v. Mudd, 206 La. 1055, 20 So.2d 311 (1944); Phillpott v. Phillpott, 285 So.2d 570 (La. App. 4th Cir.1973), writ denied, 288 So.2d 643 (La.1974).
We note that appellee did not contend at trial, nor does he contend on appeal, that he and his former wife never had sexual relations over the last ten or so years of their marriage, which appears to be the time period in which the decline of their relationship occurred. However, sexual denial as a ground for fault does not lend itself to a "bright-line" definition, there is no "magic number" in regard to frequency of or duration of sexual refusal that we can broadly apply to every case; rather, whether sexual denial constitutes fault depends on the facts and circumstances of the discrete case. The determination of whether appellant's refusal of sex to her husband was reasonable or unreasonable, persistent or non-persistent, is largely based on the trial judge's evaluation of the effect of such conduct on the marriage of the parties, the circumstances surrounding the refusals, and whether such refusals might be justified. As with other species of "cruelty," the highly subjective nature of this determination mandates that a reviewing court grant great deference to a trial judge's finding that sex denial constitutes "fault." The trial judge's factual determination includes not only his finding in regard to the frequency of sex, but also his determination that sexual denial by the ostensibly at-fault spouse reached a level of cruelty to the other spouse which "render[ed] their living together insupportable." La.Civ.Code art. 138(3). In the absence of manifest error, the factual component of such a fault determination should not be disturbed on appeal. LeBlanc v. LeBlanc, 362 So.2d 568, 569 (La.1978).
In this case, the record, taken as a whole, supports the factual conclusions of the trial judge. He necessarily evaluated the credibility of the witnesses, and he accepted as substantially true the evidence offered by appellee. The trial judge applied the correct legal standards to this case. There is no legal error, nor manifest error as to factual conclusions.
Based on the above reasons, the judgment of the trial court is affirmed at appellee Marilyn Milburn Derbes' cost.
AFFIRMED.
NOTES
[1] We note that article 160 has been amended on numerous occasions, including two amendments in 1982. However, the requirement that a former spouse must be free from fault in order to receive permanent alimony is longstanding, and has been present in all modern versions of article 160. See Comment, The Fault Preclusion to Post-Divorce Alimony in Louisiana, 57 Tul.L.Rev. 351, 357, 359 (1982). Therefore, jurisprudence interpreting this aspect of our domestic relations law has not been vitiated by any revisions in article 160.