482 So.2d 882 (1986)
Lilli Ann Stewart NOWLIN, Plaintiff-Appellee,
v.
Bobby Ray NOWLIN, Defendant-Appellant.
No. 17448-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1986.
Rehearing Denied February 20, 1986.
*883 John S. Odom, Jr., Shreveport, for plaintiff-appellee.
A. Richard Snell, Bossier City, for defendant-appellant.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
HALL, Chief Judge.
In this divorce action, defendant, Bobby Ray Nowlin, appeals from the judgment of the district court finding plaintiff, Lilli Ann Stewart Nowlin, free from fault in the termination of the marriage and awarding her permanent alimony in the amount of $800.00 per month. At issue on appeal is whether the plaintiff is guilty of fault so as to preclude her from receiving permanent alimony and if not, whether the award of permanent alimony in the amount of $800.00 per month is excessive. For the reasons expressed herein, we affirm the judgment of the trial court finding the plaintiff to be free from fault and, finding the award of permanent alimony by the trial court to be excessive, amend the judgment so as to provide plaintiff permanent alimony in the amount of $500.00 per month.
FACTS
The parties were married in Leesville, Louisiana on December 27, 1969 and two children were born of the marriage, Heather, age 3 and Tiffany, age 9. The defendant is a major on active duty in the United States Air Force and is currently stationed at Barksdale Air Force Base. During their marriage, the couple moved fairly frequently, living throughout the United States and in England. It appears that serious problems began to develop in the marriage in the summer of 1983 when the couple was transferred from Michigan to Louisiana. At that time, defendant openly entered into an adulterous relationship with Roberta Aldridge, which relationship was continuing at the date of trial with defendant and Aldridge expecting a child. The marital problems eventually culminated in defendant's move from the matrimonial domicile in February, 1984. Defendant is now living in his camp on Lake Bistineau with Aldridge.
Plaintiff originally instituted an action for a legal separation alleging that defendant was guilty of abandonment, extreme mental cruelty and adultery. Defendant reconvened alleging that plaintiff was guilty of cruel treatment in that she refused to have sexual relations with defendant in the four to five months preceding the break-up of the couple's marriage and had refused to have sexual relations with defendant for substantial periods of time throughout the marriage causing defendant to feel inept as a man. Defendant further alleged that plaintiff was guilty of constructive abandonment and that plaintiff flew into fits of rage without provocation or cause, striking defendant about the face, head, and chest. Defendant prayed for a judgment of divorce alleging that the parties had been physically separated in excess of one year without reconciliation and that the plaintiff be found guilty of fault so as to preclude her from receiving permanent alimony. In response, plaintiff admitted that a divorce should be granted but it should be based solely on the fault of the defendant and she should be entitled to an award of permanent alimony.
*884 At the trial on the merits, plaintiff testified that she would classify the couple's marriage as a typical one with the usual "ups and downs." Plaintiff testified that defendant began his relationship with Aldridge in the summer of 1983 when he returned to Michigan to make the final arrangements for the move to Louisiana while the plaintiff and the children remained in Louisiana. Defendant candidly told plaintiff that he had met another woman and had had sexual relations with her. Defendant openly spoke to Aldridge on the telephone and corresponded with her. Defendant again returned to Michigan in September, 1983 and went on a camping trip with Aldridge while he was there. Before he left, plaintiff testified that defendant told her that he had to decide between the two women. After his return, defendant stated to plaintiff that he did not want the marriage to work and on numerous occasions told plaintiff that he did not love her. Plaintiff testified that she would characterize the sexual relationship of the parties during the marriage as normal with sexual relations occurring at a frequency of two to three times a week. Plaintiff testified that except for periods due to pregnancy or physical illness, the longest period of time that the parties did not have relations was approximately one month. Plaintiff testified that she had attempted to initiate sexual relations with defendant after learning of his relationship with Aldridge but that defendant withdrew from her and eventually began sleeping on the couch before he moved from the matrimonial domicile. Plaintiff suggested that the couple see a marriage counselor but defendant refused. Plaintiff admitted that the couple's sexual relationship was a source of disagreement between the parties and that she had denied defendant sexual relations on occasion but stated that throughout the marriage she had tried her best to be a loving, caring wife. Plaintiff testified that she did not order the defendant to leave the family home and admitted she may have struck the defendant on his arms during arguments, but denied ever striking the defendant's face or chest.
Defendant testified that he had contemplated divorce shortly after the move to Louisiana before he returned to Michigan as he was "tired" of the marriage and arguments. Defendant testified that he told plaintiff about his relationship with Aldridge to "loosen her up" as he felt she was prudish. Defendant testified he had also had an earlier brief adulterous relationship and admitted corresponding with Aldridge through letters and telephone calls. Defendant stated he told plaintiff before his trip to Michigan in September, 1983 that he had to make a decision as to whether the couple should divorce. Defendant admitted refusing to see a marriage counselor as at that time he did not want the marriage to work and telling the plaintiff that he did not love her. Defendant testified he moved from the family home in January-February, 1984, telling plaintiff he needed to be out and think about things, however, defendant stated that the plaintiff had asked him to leave. Defendant admitted plaintiff asked him to return home shortly after he moved but that he refused. Defendant further admitted that he had refused plaintiff's sexual advances in the two months preceding his move from the family home. Defendant testified that at one point, he broke off his relationship with Aldridge and attempted a reconciliation with plaintiff which was unsuccessful. As to the couple's sexual relationship, defendant testified the parties sometimes would have sexual relations very frequently. Defendant estimated that the longest period without sexual relations was four to six weeks with the exception of periods due to pregnancy, illness, or physical separation. Defendant testified he felt that he had never been able to satisfy plaintiff during their marriage and that plaintiff struck him about the upper body during arguments. Defendant further testified that plaintiff refused to participate in leisure activities with him such as hunting and fishing and refused to entertain which adversely affected his career in the service.
After reviewing the evidence, the district court granted a judgment of divorce pursuant *885 to LSA-R.S. 9:301 in favor of defendant. The district court found there was no question as to the defendant's fault due to his adulterous relationship and held that the plaintiff was free from fault. The court awarded plaintiff permanent alimony in the amount of $800.00 per month payable in two equal installments of $400.00 each on the first and fifteenth day of each month. Plaintiff was awarded permanent custody of the two minor children subject to defendant's reasonable visitation and child support in the amount of $600.00 per month.
ASSIGNMENTS OF ERROR
On appeal, defendant-appellant asserts the following assignments of error:
1. The district court erred in finding plaintiff free from fault, specifically that her actions and inactions caused defendant to feel so inept and degraded as a man that it rendered the marriage unsupportable and constituted fault; and if plaintiff was free from fault,
2. The district court erred in awarding an excessive amount of permanent alimony.
FAULT OF PLAINTIFF
It is well-settled that the findings of fact by the trial court will not be disturbed on appeal unless manifestly erroneous. Pearce v. Pearce, 348 So.2d 75 (La. 1977); Edelen v. Edelen, 457 So.2d 171 (La.App.2d Cir.1984); Kaplan v. Kaplan, 453 So.2d 1218 (La.App.2d Cir.1984), writ denied, 458 So.2d 484 (La.1984); Creech v. Creech, 449 So.2d 1192 (La.App.2d Cir. 1984); Jenkins v. Jenkins, 441 So.2d 507 (La.App.2d Cir.1983), writ denied, 444 So.2d 1223 (La.1984), and Taddonio v. Kinney-Taddonio, 428 So.2d 486 (La.App. 4th Cir. 1983). As noted in Pearce v. Pearce, supra, much discretion must be vested in the trial judge in the area of domestic relations and particularly in evaluating the weight of the evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. See also Creech v. Creech, supra. A spouse is entitled to alimony only if he or she was free from fault in the termination of the marriage and is without sufficient means of support. LSA-C.C. Art. 160; Higginbotham v. Higginbotham, 457 So.2d 165 (La.App.2d Cir.1984); Jergins v. Jergins, 451 So.2d 1336 (La.App. 1st Cir.1984); McKnight v. McKnight, 401 So.2d 445 (La. App. 1st Cir.1981), writ denied, 406 So.2d 627 (La.1981); Palmer v. Palmer, 433 So.2d 346 (La.App.3d Cir.1983), writ denied, 441 So.2d 213 (La.1983); Boudreaux v. Boudreaux, 460 So.2d 722 (La.App.3d Cir. 1984), and citations therein. To constitute fault, the conduct of the spouse must not only be of a serious nature but also must be an independent contributory or proximate cause of the separation. Conduct which is sufficient to deprive a spouse from being entitled to alimony is synonymous with the fault grounds for a separation and divorce enumerated in LSA-C.C. Arts. 138 and 139. Higginbotham v. Higginbotham, supra; Jergins v. Jergins, supra; Hollins v. Hollins, 428 So.2d 924 (La.App. 1st Cir. 1983); McKnight v. McKnight, supra; Slaughter v. Slaughter, 436 So.2d 1352 (La.App.3d Cir.1983); Boudreaux v. Boudreaux, supra; Taddonio v. Kinney-Taddonio, supra, and numerous citations therein. The spouse claiming entitlement to permanent alimony bears the burden of proving freedom from fault in the termination of the marriage. Slaughter v. Slaughter, supra; Boudreaux v. Boudreaux, supra, and citations therein.
It is well-settled that under LSA-C.C. Art. 138, cruel treatment by one spouse of the other, in any form which renders living together insupportable, is a proper ground for legal separation from bed and board. Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980); Shirrmann v. Shirrmann, 436 So.2d 1340 (La.App. 5th Cir.1983), writ denied, 440 So.2d 761 (La.1983) and 440 So.2d 764 (La. 1983); Dickinson v. Dickinson, 399 So.2d 651 (La.App. 1st Cir.1981), and citations therein. The courts in this state have recognized *886 that the persistent and unjustified refusal to engage in sexual relations, in the absence of consent, sickness, or grave fault may constitute cruel treatment within the purview of LSA-C.C. Art. 138. Von Bechman v. Von Bechman, supra; Dickinson v. Dickinson, supra; Derbes v. Derbes, 462 So.2d 302 (La.App. 3d Cir.1985); Boudreaux v. Boudreaux, supra; Taddonio v. Kinney-Taddonio, supra; Saucier v. Saucier, 357 So.2d 1378 (La.App. 4th Cir.1978); Phillpott v. Phillpott, 285 So.2d 570 (La. App. 4th Cir.1973), writ denied, 288 So.2d 643 (La.1974), and Schirrmann v. Schirrmann, supra. A review of the jurisprudence reveals that the courts have not devised or imposed a quota or formula for the required frequency of marital relations, less than which would constitute fault. As noted in Derbes v. Derbes, supra, there is no "magic number" in regard to frequency of sexual relations and the denial of sexual relations as ground for fault is not capable of a "bright-line definition." Rather, whether sexual denial constitutes fault must necessarily depend on the facts and circumstances of each case. See also Taddonio v. Kinney-Taddonio, supra, and Schirrmann v. Schirrmann, supra.
After reviewing the evidence, we find that the trial court was not manifestly erroneous in finding the plaintiff to be free from fault in the termination of the marriage.
The principal contention by the defendant was that plaintiff was guilty of cruel treatment in denying defendant sexual relations, striking him on occasion, and otherwise engaging in such conduct so as to cause defendant to feel inept and degraded, thus rendering the marriage insupportable.
With regard to the allegations as to the denial of sexual relations, the testimony of the parties is conflicting. While defendant testified that the parties abstained from sexual relations for periods up to six weeks and that relations occurred somewhat infrequently, the plaintiff testified that the parties had sexual relations frequently. There was no evidence in the record that plaintiff persistently refused to engage in sexual relations. Further, while plaintiff admitted she had struck the defendant on the arms on occasion during arguments, it does not appear from the record that plaintiff intended to inflict physical harm upon the defendant.
As noted earlier, much discretion must be vested in trial court in the area of domestic relations particularly in evaluating the weight of the evidence which is resolved primarily on the basis of the credibility of the witnesses as much of the conduct occurs in the privacy of the family home and outside the presence of other witnesses. In the instant case, the trial judge heard the testimony of both parties, evaluated the credibility of the witnesses, and evaluated the effect of each party's conduct on the marriage of the parties. The factual findings of the trial court that the plaintiff was not guilty of cruel treatment and therefore was not at fault in the termination of the marriage is supported by the record as a whole and will not be disturbed by this court on appeal. As plaintiff was free from fault in the termination of the marriage, then she is entitled to receive permanent alimony.
AMOUNT OF ALIMONY
Defendant argues that the award of permanent alimony by the trial court in the amount of $800.00 per month is excessive and that alimony should be fixed at $500.00 per month.
It is well-settled that the trial court is vested with great discretion in fixing alimony and awards of alimony should not be disturbed absent a clear abuse of discretion. Martin v. Martin, 457 So.2d 189 (La.App.2d Cir.1984); Gray v. Gray, 451 So.2d 579 (La.App. 2d Cir.1984), writ denied, 457 So.2d 13 (La.1984); Billiot v. Billiot, 432 So.2d 381 (La.App. 1st Cir. 1983); Cunningham v. Cunningham, 448 So.2d 910 (La.App. 3d Cir.1984), and citations therein. In determining the amount of alimony, the initial inquiry is whether the claimant spouse has sufficient means for his/her support. Hilton v. Hilton, 451 So.2d 90 (La.App.3d Cir.1984) and Billiot v. Billiot, supra. In making this consideration, *887 the trial court must consider the claimed expenses. Billiot v. Billiot, supra. The claimant spouse is limited to a sum sufficient for his/her maintenance which includes the allowable expenses for food, shelter, clothing, reasonable and necessary transportation or automobile expenses, utilities, household expenses, medical and drug expenses, and the income tax liability generated by the alimony payments. Gray v. Gray, supra; Arabie v. Arabie, 447 So.2d 22 (La.App. 1st Cir.1984); Billiot v. Billiot, supra; Hilton v. Hilton, supra, and numerous citations therein. A claimant spouse need not be destitute to qualify for permanent alimony. Gray v. Gray, supra and citations therein.
As noted by this court in Gray v. Gray, supra, in determining the adequacy of, or lack of need for, a given level of permanent alimony an interrelated complex of statutory factors are utilized. The relevant considerations have been broadly drawn and encompass such factors as the income, means, assets, and earning capacities of the spouses as well as their liabilities and obligations. The courts must examine the totality of the circumstances indicative of the financial condition of both parties in evaluating whether alimony is needed and therefore, legally appropriate. Thus, the permanent alimony determination is necessarily sensitive to the particular facts of each case and is unsusceptible of being reduced to a mathematical computation.
In the instant case, plaintiff testified that she was unemployed and was currently attending college at Northwestern State University two days a week, taking approximately nine semester hours. Plaintiff had no other income and had not been employed since her marriage in 1969. The affidavit which plaintiff introduced into evidence revealed itemized monthly expenses totaling $617.50. The expenses are listed as follows:

Food $175.00
Household Supplies $20.00
Dental Care $12.50
Clothing $100.00
Laundry and Cleaning $10.00
Personal Items and Grooming
 Necessities $15.00
Recreation and Special Lessons $25.00
Vacation $50.00
Auto Expenses $75.00
College Tuition $135.00

In addition to these itemized expenses, plaintiff showed utility and insurance expenses on her affidavit totaling $415.00. Since these expenses are presumably attributable to plaintiff and her children, we will assume that one-third of these expenses, approximately $138.00, is attributable to plaintiff's maintenance. Thus, based on plaintiff's affidavit, her monthly expenses total $755.50. However, it does not appear that all of these expenses are required for the maintenance of the plaintiff within the meaning of LSA-C.C. Art. 160 and several items should not have been considered by the trial court in fixing permanent alimony. Under the clothing expenditure, plaintiff shows expenses of $100.00 per month, which item is clearly excessive under the standard of maintenance enumerated in LSA-C.C. Art. 160. Additionally, plaintiff shows vacation expenses in the amount of $50.00 per month and recreation expenses in the amount of $25.00 per month which items should not be considered in fixing alimony. Finally, plaintiff shows monthly expenses for college tuition at $135.00 which is excessive in light of the plaintiff's testimony elicited at trial showing the tuition was less. Further, while LSA-C.C. Art. 160 provides that the court shall consider the time necessary for the alimony recipient to acquire appropriate education or training, it does not appear that college tuition expenses would fall within the allowable expenses for maintenance as contemplated by the article. Rather, it appears that the time necessary to acquire education or training is considered only in relation to the earning capacity of the claimant spouse. Thus, while the effect of plaintiff pursuing an education may be properly considered in determining her present earning capacity when fixing the amount of alimony, the expense of that education does not appear to be a proper element of permanent alimony. While this court recognizes that rehabilitation *888 of the recipient spouse through education or training is often a necessary and beneficial step towards independence and self-support by increasing that spouse's earning capacity, the limitations of LSA-C.C. Art. 160 do not authorize the expense of such education or training to be included as an element of permanent alimony. Further, in the instant case, the record shows that plaintiff is capable of some type of part-time employment which would assist her in financing her education.
Thus, by eliminating the excessive expenses and those expenses which are not allowed under the standard of maintenance enumerated in LSA-C.C. Art. 160, it appears that plaintiff is entitled to at most $500.00 per month in permanent alimony.
For these reasons, the judgment of the trial court is hereby amended so as to award plaintiff, Lilli Ann Stewart Nowlin, permanent alimony in the amount of $500.00 per month and in all other respects, the judgment is affirmed. Costs of this appeal are assessed to defendant, Bobby Ray Nowlin.
AMENDED, AND AS AMENDED, AFFIRMED.