412 So.2d 633 (1982)
William McAdoo ROBINSON, Plaintiff-Appellee,
v.
Fay Burton ROBINSON, Defendant-Appellant.
No. 14771.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1982.
Rehearing Denied April 12, 1982.
*634 Jack, Jack, Cary & Cary by Wellborn Jack, Jr., Shreveport, for defendant-appellant.
Whitmeyer, Thomas & Glassell by Stephen A. Glassell, Shreveport, for plaintiff-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
En Banc. Rehearing Denied April 12, 1982.
MARVIN, Judge.
Mrs. Robinson appeals, seeking to increase permanent alimony awarded her in a judgment of divorce. C.C. Art. 160. We amend to increase and affirm.
These litigants, now more than 65 years of age, were legally separated in 1976 after nearly 40 years of marriage in which Mr. Robinson was the only wage earner. From his gross weekly earnings of approximately $230, Mr. Robinson paid Mrs. Robinson $175 monthly alimony pendente lite as ordered in the separation judgment. Her modest needs were shown to be $475 monthly. She subsisted by depleting capital derived from the sale of the former family home she received in the community partition and by obtaining some welfare and food stamp benefits, inconsequential earnings from a church nursery and other sources, and donations from her children.
Mr. Robinson retired in 1981 from gainful employment and his monthly income is now $723, derived from social security ($617), retirement pension ($65), and interest on savings ($41).
Mrs. Robinson's monthly income is $325, all from social security except for about $10 per month from leases on Arkansas property in which she inherited a fractional interest.
The trial court found that "... Mrs. Robinson's needs are sufficient that she should *635 be entitled to more than what the Social Security Administration is giving her ... that she is entitled to the alimony award requested of $175, [but] that the Social Security benefits received as a spouse will be deemed to satisfy same ... [and] if there are changes in Mr. Robinson's situation which would tend to reduce her benefits below the sum awarded, then Mr. Robinson will have the responsibility of making up same accordingly." In addition, the trial court ordered Mr. Robinson to pay 1/3 of his $65 retirement pension, or $21.66, to Mrs. Robinson as permanent alimony.[1]
The trial court effectively recognized that Mrs. Robinson had minimal needs of $475 a month, or $160 more than the $316 social security benefit, but apparently declined to consider Mr. Robinson's social security benefit as providing him with the means to pay her needs. The trial court "interpreted" the social security benefit, not as income, but as a property right of each spouse.
We construe Congressional policy, however, to allow the social security benefit received by each spouse to be considered in determining the amount of permanent alimony, whatever the legal categorization of the benefit. See Social Security Act, 42 U.S.C.A. 301, et seq. 42 U.S.C.A. 659, 662(c), (f), expressly provides that the benefit shall be subject to legal process brought to enforce the recipient's obligation to make alimony payments. See Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). See also "Annotation: AlimonyPension as a Resource", 22 A.L. R.2d 1421, and other annotations at 1 A.L. R.3d 6 and 123, and 51 A.L.R.3d 461. Compare Litton v. Litton, 342 So.2d 1222 (La. App. 2d Cir. 1977).
La.C.C. Art. 160 provides in part that the court may allow a spouse, not at fault, "... out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income ... [and that] in determining the... amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses." Emphasis supplied. Once the amount of the need of the spouse for alimony after divorce is determined, the only limitation is that the amount the other spouse is obligated to pay shall not be more than one-third of that spouse's income, and that the amount shall be determined by the other spouse's means or ability to pay. The word income in C.C. 160 should be fairly construed in light of its context in the statute, the purpose of the statute, and with other language of the statute (such as property, means, and assets). C.C. 160 income is not synonymous with income under federal or state tax law, but includes such things as disability insurance payments and bookkeeping losses or deductions for depreciation. See Stolier v. Stolier, 357 So.2d 1334, 1336 (La.App. 4th Cir. 1978), writ refused, and annotations, cited supra.
Here, Mrs. Robinson does not have sufficient means for her support. She needs approximately $160 more than she is receiving from social security and other sources. Mr. Robinson has C.C. 160 income of $723, and $160 does not exceed one-third of this C.C. 160 income. The trial court did not base its award of $21.66 alimony on Mr. Robinson's lack of C.C. 160 means or ability to pay more than that amount. In determining the increase of the award, we must consider the directions of C.C. 160.
Mr. Robinson is shown to have lived industriously and frugally, moonlighting at other jobs and saving his money. After the 1976 separation and transfer of most of the community to Mrs. Robinson,[2] he managed *636 to save $7,500 which he used sometime before the divorce to purchase 31/3 acres about 15 miles distance from his rented apartment. He is clearing this land by his own hands to plant peas and other truck crops to provide himself with food. His automobile expenses are justifiably greater than Mrs. Robinson's because of his trips to the garden site. His expenses for food are also greater than Mrs. Robinson's because he occasionally eats out. He estimates he spends about $40 per month for this purpose. He shows that his needs total $711 per month, but this monthly figure includes $60 for vacation, $35 for gifts (primarily cash wedding and birthday gifts to family members) and $30 for clothing. He spends less than Mrs. Robinson on rent and drugs but more on utilities, clothing, gifts, travel and food. It is not the function of a court to equalize the respective financial situation of the litigants in determining alimony, but to provide the spouse in need with the basic necessities of life. Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973).
Weighing Mr. Robinson's means against Mrs. Robinson's need, we conclude that the trial court erred in determining the award of permanent alimony and in not treating social security benefits received by each litigant simply as C.C. 160 income to each. Permanent alimony is not permanent in the sense that it cannot be modified as the circumstances, including social security benefits, of the parties might change. See Willis v. Willis, 355 So.2d 999 (La.App. 4th Cir. 1978), writ refused.
Accordingly, the judgment appealed is amended to delete all references to and conditions of social security benefits and to increase the monthly permanent alimony award from $21.66 to $120, effective the first day of the month following the date that this opinion becomes final. C.C.P. 2164.
At appellee's cost, the judgment, as amended, is AFFIRMED.
NOTES
[1] Trial counsel understood, as we understand, that the trial court was attempting to protect Mrs. Robinson in the event her social security income was reduced by Mr. Robinson earning more than the $5,500 annual minimum allowed by social security "... then he has got to pay her the difference between that social security check less than $175 and $175."
[2] In the 1976 partition of the community, Mrs. Robinson received:

Full ownership of the matrimonial home located at 2931 Amherst Street, Shreveport, Louisiana
One 1973 Rambler Matador 4-door sedan All furniture, furnishings, and appliances located in the former family home
All money presently in Mrs. Robinson's name, and the federal income tax refund check payable to Mr. and Mrs. Robinson in the sum of $135.
All of her personal belongings and possessions
Any other community property not specifically enumerated by this community property settlement.
Mr. Robinson received:
One 1965 Rambler Classic automobile
His tools, electric motor, paint equipment, etc.
All F. M. Robinson family pictures located in the former family home
All of his personal possessions and belongings which are already in his possession.
In addition, Mr. Robinson agreed to pay the mortgage payments on the former family home for the first six months following the date of the judgment of legal separation.