592 So.2d 855 (1991)
Gloria R. GIBSON, Plaintiff-Appellee,
v.
Larry L. GIBSON, Defendant-Appellant.
No. 90-607.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
Rehearing Denied January 29, 1992.
*856 Leonard Knapp, Jr., Lake Charles, for plaintiff/appellee.
Edward K. Alexander, De Quincy, for defendant/appellant.
*857 Richard P. Ieyoub, Richard D. Michels, Lake Charles, for defendant/appellee, State.
Before DOMENGEAUX, C.J., and GUIDRY and KING, JJ.
DOMENGEAUX, Chief Judge.
These consolidated cases concern the dissolution of the marriage of Gloria R. Gibson and Larry L. Gibson. The parties were married in 1964 and physically separated in 1987. Four children were born of the marriage, only one of which remained a minor at the time of trial.
Our docket number 90-607 is Larry Gibson's appeal of the divorce proceedings initiated by Gloria Gibson and involves the issues of fault, alimony, community property, and visitation. Docket number 90-608, 592 So.2d 861 is Larry Gibson's appeal of a rule for enforcement of child support filed on behalf of Gloria Gibson by the State of Louisiana, through the Department of Health and Human Resources, Office of Social Services. We will discuss both cases in this opinion, but will render a separate decree in each case.
Gloria Gibson initially filed for separation on the grounds of physical and mental cruelty. She was awarded alimony pendente lite and child support, and reciprocal restraining orders were issued against both Larry and Gloria. Gloria then filed for divorce based on living separate and apart for more than one year. The divorce was granted; Gloria was found free from fault and awarded permanent alimony. The community property was partitioned and Larry was ordered to equalize the partition by executing a note in favor of Gloria. Gloria was given custody of the minor child, while Larry was ordered to pay child support and was granted visitation privileges. Subsequently, a judgment of arrearages was entered against Larry for past due alimony and child support. Larry has appealed, raising numerous questions for our review. We affirm in part, reverse in part, and render.

FAULT AND PERMANENT ALIMONY
Gloria Gibson was found free from fault in causing the break up of her marriage to Larry Gibson. As a result, Gloria was awarded permanent alimony in the amount of $100.00 per month.
Gloria brought this action for divorce pursuant to La.R.S. 9:301 (now codified at La.C.C. Art. 103) which authorizes the granting of a divorce if the spouses have been living separate and apart for more than one year. Fault by either party is not an issue in this type of divorce unless one party seeks permanent alimony under La.C.C. Art. 112 (formerly La.C.C. Art. 160). Article 112 restricts an award of alimony to a spouse who has not been at fault and does not have sufficient means to support himself or herself. The party seeking alimony has the burden of proving both criteria. Lamb v. Lamb, 460 So.2d 634 (La.App. 3d Cir.1984), writs denied, 462 So.2d 1249, 1250 (La.1985).
In the case before us, Gloria did not request, in her pleadings or otherwise, an award of permanent alimony. She was initially awarded alimony pendente lite which terminates upon divorce. George v. George, 347 So.2d 927 (La.App. 3d Cir. 1977). Upon granting the divorce, the trial judge awarded permanent alimony in the same amount as the previous award of alimony pendente lite, without regard for the absence of a request for permanent alimony.
La.C.C.P. Art. 862 provides:
... [A] final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.
Further, La.C.C.P. Art. 1154 provides:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading[s]. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, *858 even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
These articles serve in part to suppress the "theory of the case" doctrine under which a litigant must initially select a theory of his case or defense and adhere to it throughout the litigation. La.C.C.P. Art. 862, Comment (b); Tassin v. Setliff, 470 So.2d 939 (La.App. 3d Cir.1985). A court may grant "the relief warranted by the averments contained in the pleadings and the evidence." Tassin, 470 So.2d at 940; Primvest, Inc. v. Dugas, 460 So.2d 718 (La.App. 3d Cir.1984); Brown v. Brown, 348 So.2d 699 (La.App. 1st Cir.1977). These articles do not, however, confer jurisdiction on a trial court to decide controversies which the litigants have not raised. La.C.C.P. Art. 1154, Note; Tassin, 470 So.2d at 941.
In the case before us, Gloria made no request in her pleadings, in specific or general language, for permanent alimony. Nor does the evidence indicate the issue was tried by the express or implied consent of Larry. The evidence adduced at the divorce hearing which took place on October 5 and 6 of 1988 indicates that Gloria receives income from social security benefits, alimony pendente lite, child support, food stamps, and contributions from her children and other relatives. The testimony does not reveal the total amount of her income, does not illustrate a comparison between her total income and expenditures, and does not indicate she has insufficient means for support. The question of each spouse's fault was litigated without objection; however, the question of Gloria's means was only glossed upon and was not fully litigated, preventing adequate consideration of Gloria's entitlement to alimony.
The issue of permanent alimony was not properly raised by the party in whose favor alimony was granted, and the trial court exceeded its authority in adjudicating same. Therefore, we reverse the award of alimony in favor of Gloria Gibson.

CHILD SUPPORT AND VISITATION
In her petition for separation, Gloria prayed for custody of her minor children and child support. (At the time, two of the four children were minors.) The trial court granted sole custody and child support to Gloria and granted visitation privileges to Larry.
When the divorce judgment was rendered only one child remained a minor. The trial court awarded custody of that child to Gloria, set child support payments at $150.00 per month, and continued the visitation arrangement previously in force which required Larry to visit with his 11 year old daughter in a Lake Charles shopping mall or other public place every other Saturday from 9:00 a.m. to 5:00 p.m.
Larry has appealed the award of child support and the visitation arrangement. Larry has also appealed the judgment of arrearages rendered in 1990 against him and in favor of the State child support enforcement office for past due child support and alimony payments totalling $4,375.00. Considering our decision concerning alimony, we reverse that portion of the arrearages judgment pertaining to past due permanent alimony payments, which began to accrue on November 1, 1989. Therefore, of the $4,375.00 judgment, $300.00 must be set aside, representing alimony for the months of November and December of 1989 and January 1990. For the reasons discussed below, the remainder of the arrearages judgment is affirmed.
Larry proved at trial that his only consistent source of income is $619.00 per month in social security disability benefits. Any other income that he receives is in the form of loans from family and friends. He *859 has a minimal amount of cash in two or three bank accounts.
It was also proved at trial that Gloria receives $275.00 per month in social security benefits on behalf of the minor child as a dependent of Larry. (Gloria also receives $275.00 per month in her own behalf under the same provision.) The trial judge found Larry's obligation to support his minor child exceeded the sum provided by the Social Security Administration. We find no error in this decision.
The general child support obligation is codified at La.C.C. Art. 135 (formerly La. C.C. Art. 158) which provides for the rights of children born of the marriage in the event of divorce. Larry does not contest this obligation. Rather, he contends he does not have adequate means to support the child and should be credited with the amount paid in social security benefits.
As this court stated in McCloud v. McCloud, 544 So.2d 764 (La.App. 3d Cir.1989), a trial judge is given reasonable latitude in determining matters affecting the welfare of children, and a judgment based upon facts disclosed in any given case is entitled to great weight. More particularly, a trial judge is given great discretion in either granting or modifying awards of alimony and child support, and his judgment will not be set aside or amended unless a clear abuse of that discretion is shown. 544 So.2d at 767.
The trial judge in the case before us was aware of the social security benefits paid on behalf of the minor child. He was also aware of Larry's income from social security benefits and other sources as best as could be determined from the evidence submitted by Larry. The trial judge ordered Larry to pay child support after considering these facts.
Similarly, in Robinson v. Robinson, 412 So.2d 633 (La.App. 2d Cir.1982), a wife's alimony award was increased due to her husband's income from social security. Her own social security income as a spouse was insufficient to meet her needs, and the Second Circuit specifically held that the social security income of each spouse must be considered in determining the appropriate amount of permanent alimony. This decision was based on 42 U.S.C. §§ 659, 662(c), (f) of the Social Security Act, which expressly provide that benefits shall be subject to legal process brought to enforce the recipient's obligation to make alimony or child support payments.[1] The parties had been divorced several years before the husband began collecting social security benefits; consequently, social security income was not a consideration at the time of the initial alimony award.
In McCloud, supra, Faul v. Faul, 548 So.2d 957 (La.App. 3d Cir.1989), and Folds v. LeBert, 420 So.2d 715 (La.App. 4th Cir. 1982), the courts allowed each father a credit on past due child support payments because the children received social security income as dependents of their disabled fathers. These cases are distinguishable from the case before us because the father's disability income began after the initial child support awards were ordered, as opposed to the award herein made with full consideration of Larry's social security income. In Folds, the court held, "Justice requires that he be relieved of the payments over and above social security disability benefits ... which could not be anticipated at the time the trial court set the amount of support." 420 So.2d at 716. The Faul court noted that social security benefits paid on behalf of the minor children resulted from the father's employment "and were made in lieu of the child support payments he would have made had it not been for his disability." 548 So.2d at 961. The trial judge in McCloud reduced a previous award of child support by the amount paid to the child in social security *860 benefits. The Third Circuit affirmed and held, "Since the child will receive the same amount of support ordered by the court, and which the court has decided the child should have, the source of the payment is of no consequence and it does not matter that the defendant is given credit for the payment made by another." 544 So.2d at 767.
Here, the trial judge decided the child was entitled to support greater than that provided by social security and the father had the means to pay it. These facts are analogous to the Robinson case. We find no error in the trial court's decision. Further, we find the judgment of arrearages ordering Larry to pay past due child support was proper.
Considering briefly the issue of visitation, we affirm the arrangement ordered by the trial court, i.e., that visitation is to be exercised in a public place in Lake Charles or at such other place as may be mutually agreed upon by the parties. The minor child testified that she is afraid of her father and does not like the way he talks to her. She is satisfied with the arrangement in the shopping mall and does not want it changed. Larry, on the other hand, would rather have the child visit in his home or at least in the town of Starks where he lives. Considering the testimony presented, we find no error in the trial court's order that visitation be exercised in a public place in Lake Charles or otherwise, as may be agreed upon by the parties.

COMMUNITY PROPERTY PARTITION
In this appeal, Larry complains of two allocations of community property made by the trial judge that he contends are erroneous. He suggests, first, that a guitar and amplifier given to Gloria should have been allocated to him, and second, that the family home awarded to him should go to Gloria.
During the pendency of these proceedings, prior to the community property partition, the parties essentially agreed that Larry would keep the guitar and amplifier and would remain in the family home until the property would be judicially partitioned. The testimony reveals that both parties wanted the guitar and amplifier as both Larry and some of the children used the items. Considering this evidence, the trial judge chose to allocate the guitar and amplifier to Gloria with whom the children spend more time. We find no abuse of discretion in this decision.
The allocation of the family home is a more complicated matter. When the trial judge initially partitioned the community property, he was under the mistaken impression that the house was located on a two acre plot of land belonging to the community. He allocated the house with two acres of land to Larry. Upon consideration of evidence submitted by Gloria in support of a motion for new trial, the trial judge issued an amended judgment which simply deleted the two acres of land in the items of community property allocated to Larry.
In actuality, the house is located on a large piece of land formerly owned by Gloria's now deceased father. The land is presently owned by Gloria as her separate property, in indivision with the coheirs of her father. The home was built with community funds and is considered by both parties to be part of the community. The record does not reflect if the house was built before or after Gloria's father died and she became a co-owner of the land. We will presume the house was built before Gloria's father died because of certain indications in the record. We note, for instance, that Gloria did not assert a claim under La.C.C. Art. 2366, contending that because the house was built on her separate property, the house necessarily is also her separate property, and she must only reimburse the community for one-half the value of the funds used to build the house.
The applicable codal article in this instance is La.C.C. Art. 493 which provides that a building constructed on the land of another with the landowner's consent, belongs to him who built it, until the right to keep the building on the land is taken away. The evidence reflects that Gloria and Larry had permission from Gloria's father to build their home on his land. *861 Article 493 further states that a landowner who initially authorized another to build on his land may later request that the building be removed. The building owner must then remove the building and restore the land to its former condition. If the building owner refuses to remove the building, the landowner acquires ownership and owes nothing to the former owner.
The community existing between Larry and Gloria presumably owns the family home while Gloria and her coheirs own the land formerly owned by Gloria's father. If Larry is given the home in the community property partition, as the trial judge awarded, he is subject to the whims of the landowners as described in Article 493. Gloria, on the other hand, as a co-owner of the land, is in a better position to negotiate with her siblings and mother as the other owners of the land, and would not be subject to the provisions of Article 493 because she would be both landowner and building owner.
We find error in the trial court's award of the family home to Larry, given the fact that his possession of the land on which the home sits is both precarious and of indefinite duration, as he can be asked to leave at any time. Accordingly, we reverse that portion of the partition allocating the home to Larry and allocate to him instead the only other major asset of the community, a 14 acre tract of rural, undeveloped land. The family home is now allocated to Gloria.
In rendering this decision, we note that Gloria's portion of the community property is greater than Larry's by $13,684.35. The partition must be equalized by the execution of a promissory note by Gloria, in favor of Larry, in the amount of $6,842.18, to be secured by a mortgage on the family home, and paid out in monthly installments for 10 years at 8% interest per annum.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and rendered. That portion of the judgment finding Gloria Gibson free from fault in causing the breakup of her marriage is affirmed, but that portion of the judgment awarding permanent alimony is reversed. That portion of the judgment awarding child support payments to Gloria Gibson is affirmed, as is the visitation arrangement ordered by the trial judge providing for visitation between Larry Gibson and his minor child. Finally, that portion of the community property partition awarding Gloria a certain guitar and amplifier is affirmed, but the award of the family home to Larry is reversed and the home is allotted to Gloria; Larry is instead allocated the 14 acre tract of land which the trial judge had granted to Gloria. Gloria is hereby ordered to execute a promissory note, in favor of Larry, in the amount of $6,842.18, to be secured by a mortgage on the family home, and paid out in monthly installments for 10 years at 8% interest per annum. In all other respects, the judgment of the trial court is affirmed. Costs on appeal are to be paid one-half by Gloria Gibson and onehalf by Larry Gibson.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] The Robinson decision conflicts with both Washington v. Washington, 418 So.2d 748 (La. App. 4th Cir.1982), and Terjersen v. Terjersen, 420 So.2d 704 (La.App. 4th Cir.1982), which held that 42 U.S.C. § 407 and the Supremacy Clause prohibit a state court from requiring a recipient of social security benefits to pay any portion of those benefits to another. Neither case, however, considered 42 U.S.C. § 659 which is a specific and express exception to § 407 and "any other provision of law." Therefore, we choose to follow Robinson, as we believe it is a more accurate statement of the applicable law.