641 So.2d 989 (1994)
Dianne Malray WADE, Plaintiff-Appellant,
v.
Curtis Ray WADE, Defendant-Appellee.
No. 25942-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1994.
*990 Northwest La. Legal Services by James A. Vaughan, Shreveport, for defendant-appellant.
Stephen R. Burke, Homer, for plaintiff-appellee.
Before SEXTON, NORRIS and VICTORY, JJ.
NORRIS, Judge.
Dianne Wade appeals a judgment denying her claim for permanent alimony from her former husband, Curtis Ray Wade. Finding no manifest error in the trial court's judgment, we affirm.

Factual and procedural background
Dianne and Curtis were married in 1976; their son, Curtis Jr., was born in 1977. The parties physically separated in October 1991, when Dianne left the marital home. Prior to the separation, Curtis worked as a machine operator for The Ludlow Corporation and earned about $2,000 per month. Dianne had been working as a nurses' aide at Evergreen Presbyterian Ministries; however, in March 1990, a patient threw her, causing her to land on and shatter her knee joint. She sued for divorce in January 1992, accusing Curtis of cruel treatment and adultery, and demanding custody of Curtis Jr., child support, alimony pendente lite, use of the family home, and a temporary restraining order. Curtis reconvened, praying for divorce on the basis of living separate and apart for six months, La.C.C. art. 102, and requesting that he receive custody of the child. At a hearing in February 1992, Dianne testified that since her work-related accident, the comp carrier had paid her $1,000, but she was not yet receiving weekly benefits. By judgment filed March 16, 1992, the trial court gave Dianne the use of the family home and entered a joint custody order naming her domiciliary parent and ordering Curtis to pay $380 per month in child support and maintain health insurance on Curtis Jr. The court further ordered Curtis to pay alimony pendente lite of $500.00 per month, of which $309.12 was to go directly to the bank for their house note; however, if Dianne were to begin to receive workers comp benefits, the alimony was to be reduced by $122.67 per month.
In August 1992 Curtis moved for final divorce under the requirements of art. 102, urging that Dianne was not free from fault in the dissolution of the marriage. Dianne answered, alleging she was indeed free from fault and in necessitous circumstances. In February 1993 the parties went to a hearing for the final divorce. After extensive testimony as to both parties' conduct toward the end of the marriage, the court orally granted the motion for divorce but stated that Dianne was free from fault. R.p. 280. The parties therefore proceeded to a final hearing in May 1993 to determine whether Dianne was in necessitous circumstances and, if so, the amount of alimony due.
At this hearing Dianne testified that she was now receiving workers comp of $488 per month, and her child support. However, since she began drawing comp, her alimony had been reduced by $122.67 per month. She testified that she was physically unable to work because of the condition of her knee, and offered the deposition of her treating physician, Dr. David Waddell, in support. Dr. Waddell described her injury as a "very severe, complex fracture" and "astoundingly terrible." Dep., 5, 13. In early 1991 he had felt she was able to return to sedentary work, but since that time he had noticed "possibly increased pain" arising from degenerative traumatic arthritis. He testified that *991 in this condition, even prolonged sitting could cause pain. He also suspected possible nerve damage secondary to the injury; he sent her to Dr. Adams for nerve conduction tests two days before his deposition, but the results were not introduced in evidence at trial. Dr. Waddell testified that Dianne would improve only with surgery, a knee fusion or a total knee replacement. He concluded that with the combination of degenerative arthritis and nerve damage (if this was present), she would be "not employable"; however, with the knee replacement, she would have a 55% disability and could be retrained for sedentary work. Dep., 7.
Dianne corroborated Dr. Waddell's assessment in her testimony at the February 1993 hearing, but admitted that she was "somewhat" able to do things around the house; she can sweep and wash dishes, but cannot lift anything heavy or squat. At the May 1993 hearing she testified that she cannot even sit down for long periods of time without pain. R.p. 299. Her educational background includes a high school diploma, one year at Grambling State University, and six months at Draughon Business College (but no degree). Her employment history includes working in a factory, drawing plasma from inmates at Wade Correctional Center, and caregiving like her work at Evergreen, where she was injured. She admitted that she had not looked for a job since her accident; she thought it was the insurance company's job to find work she could do, but she was simply unable to work. R.p. 304.
At both the February 1993 and the May 1993 hearings, Curtis developed evidence that Dianne had a male friend, Donald Walker, who was spending some time at Dianne's house. Dianne claimed Walker was letting her use his car to go to doctor's appointments in Shreveport but denied that he was living with her, admitting only that he stayed at the house about once a week, sleeping on her couch. She does not charge him rent, and she "might" offer him something to eat if she cooks. R.p. 311.
At the time of the May 1993 hearing, Curtis was earning over $2,400 per month at Ludlow. He felt that Dianne was able do some kind of work. He also testified that he had been by the house on several occasions and seen Walker's car; he resented that she "had another guy living there at [Curtis's] expense." R.p. 351.

Action of the trial court
In written reasons for judgment, the trial court found that Dianne "does indeed have a severe knee injury." It continued:
She may, however, be well able to maintain some type of sedentary employment if properly trained. Her past education includes a year in college and six months of business school. Mrs. Wade has not sought any training nor has she looked for any job, but she has the ability to host her boyfriend in her home overnight at least once a week.
This court finds that Mrs. Wade has decided not to work. Judgment should be in favor of Mr. Wade, denying alimony.
From this judgment, Dianne has appealed. Curtis has neither appealed nor answered the appeal, although he asserts in brief that Dianne was guilty of "sufficient" fault or open concubinage to deny her permanent alimony. We will not consider his contentions. La.C.C.P. art. 2133.

Applicable law
Alimony after divorce is regulated by La. C.C. art. 112. It provides in part:
When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income.
In determining the amount of alimony, the initial question is whether the claimant spouse has sufficient means for her support. Nowlin v. Nowlin, 482 So.2d 882 (La.App. 2d Cir.1986). "Support" means a sum sufficient for her maintenance, which includes the allowable expenses for food, shelter, clothing, reasonable and necessary transportation or automobile expenses, medical and drug expenses, and the income tax liability generated by the alimony payments. Nowlin v. Nowlin, supra, and citations therein. In deciding the entitlement and amount *992 of alimony, the court should consider, among other things, the income, means and assets of the spouses; the financial obligations of the spouses, including their earning capacities; the time necessary for the recipient to acquire appropriate education, training or employment; and the health and age of the parties. C.C. art. 112 A(2)(a), (c), (e), (f). However, the court must consider the totality of the circumstances in light of the statutory factors. C.C. art. 112 A(3); Slayter v. Slayter, 576 So.2d 1121 (La.App. 3d Cir.1991).
The trial court is vested with great discretion in fixing alimony; awards should not be disturbed absent a clear abuse of discretion. Nowlin v. Nowlin, supra, and citations therein. This concept conforms with the general rule that the trial court's resolution of disputed factual issues is presumably correct and may be disturbed only when the evidence as a whole shows that the finding is manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). Moreover, appeal is from the judgment itself, not from the reasons for judgment. Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2d Cir.1987), and citations therein.

Discussion
Dianne urges on appeal that the trial court committed manifest error in finding that she "has decided not to work," in spite of finding that she did indeed have a severe knee injury. She points out that the accident caused her bones to stick out of her skin, and reiterates several of Dr. Waddell's comments, such as, "I have difficulty envisioning how that she can go on, really, with activities of daily living from what I see on a clinical basis, but she continues to do so," and "at this time with the combination of the degenerative arthritis and possibly nerve symptoms secondary to her injury, she is not employable." Dep. 11, 7. She further asserts that if she were capable of performing even a sedentary job, she would not be receiving workers comp. See La.R.S. 23:1221(1)(b). She finally argues that once the trial court's conclusion as to her ability to work is corrected, the record shows that she has insufficient means of support and will enable this court to calculate the amount of alimony.
Viewed strictly from the standpoint of Dr. Waddell's deposition, the trial court's conclusion seems indefensible. Dr. Waddell testified he found Dianne was "not employable" and, after the knee replacement, would still have a 55% disability. This opinion was admittedly based on the prospect that Dianne might also have nerve damage, and he sent her to Dr. Adams for tests in March 1993. At the hearing in May 1993, Dianne offered neither the results of these tests nor the deposition of Dr. Adams. The trial court may have felt that the test results would not have supported the hypothesis of nerve damage. See Cox v. Cadaro, 484 So.2d 177 (La. App. 5th Cir.1986), and citations therein. Dr. Waddell testified that if the nerve test was negative, then Dianne could be retrained to work within her limits of tolerance. Dep., 14. Dianne freely admitted she had not considered any retraining, even though a Vo-Tech was not far from her home and she had some academic background.
The evidence in favor of the trial court's finding includes Dianne's statement at the February 1993 hearing that she was "somewhat" physically able to do work around the house. R.p. 190. Also, Curtis thought Dianne was able to work, although he did not explain why. R.p. 342. Even with this evidence, however, the record is clear that Dianne is either totally or, at best, significantly disabled. If this were the only consideration in the case, we would be inclined to declare the trial court's finding manifestly erroneous. Rosell v. ESCO, supra.
The appeal, however, is from the judgment and not from the reasons for judgment. Hardin v. Munchies, supra. The instant judgment is based not only on Dianne's earning capacity but also on her "income, means and assets." Art. 112 A(2)(a). Although with her severe injury she is unable to work for wages (or her earning ability is severely diminished), her accident arose out of and in the course of her employment with Evergreen and is therefore compensable. La.R.S. 23:1031 A. The comp carrier has been paying her $122.67 per week, which is equivalent to $527 per month under the formula of R.S. *993 23:1221(3)(a). This sum must be viewed as her "means or assets" under art. 112, just as the Social Security benefits received by both spouses are so considered. Robinson v. Robinson, 412 So.2d 633 (La.App. 2d Cir.1982). In fact, this sum represents two-thirds of her gross wages, R.S. 23:1221(1), 1021(10), and roughly 75% of her prior take-home pay. The instant judgment is not plainly wrong in that Dianne, with her comp and control over the child support payments of $380 per month, does not presently lack sufficient means for support. If comp should be terminated and Dianne is still unable to work, she is entitled to seek to modify the judgment by alleging a substantial change in circumstances. La.R.S. 9:311 A; cf. Crowder v. Crowder, 595 So.2d 810 (La.App. 2d Cir.), writ denied 598 So.2d 358 (1992).

Conclusion
For the reasons expressed, the judgment is affirmed. Costs are assessed to the appellant, Dianne Malray Wade, to the extent permitted by law. La.C.C.P. art. 5188.
AFFIRMED.