713 So.2d 1271 (1998)
Malcolm Lee WASCOM, Jr.
v.
Lucy F. WASCOM.
No. 97 CA 0547.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
*1272 Sondra A. Cheek, Bogalusa, for Defendant-in-Rule/Appellant Malcolm Lee Wascom, Jr.
Jill E. Leber, Covington, for Plaintiff-in-Rule/Appellee Lucy F. Wascom.
Before GONZALES, PARRO and GUIDRY, JJ.
GUIDRY, Judge.
The defendant-in-rule appeals from the trial court judgment awarding permanent alimony in favor of his former wife. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Malcolm L. Wascom, Jr. ("Malcolm") and Lucy F. Wascom ("Lucy") were married on December 10, 1977. One child, Amy L. Wascom ("Amy"), was born of their marriage on November 13, 1980. They separated on May 12, 1994. By judgment dated August 18, 1994, Lucy was awarded alimony pendente lite of $650.00 per month and child support *1273 for Amy of $564.00 per month.[1] The parties were divorced by judgment dated January 19, 1995, on the ground that they had lived separate and apart for 180 days.
On May 22, 1995, Lucy filed a rule for permanent alimony and an increase in child support. The rule for permanent alimony was dismissed by the trial court pursuant to Malcolm's exceptions raising the objections of unauthorized use of summary proceeding, vagueness, and no cause of action. From the order sustaining the exceptions, Lucy applied for supervisory writs. On December 14, 1995, the writ was granted by this court, reversing the trial court judgment sustaining the exceptions and dismissing Lucy's rule for permanent alimony. Wascom v. Wascom, 95 CW 1933 (La.App. 1st Cir. 12/14/95).
Following the hearing on Lucy's rule for permanent alimony, the trial court awarded her $350.00 per month as permanent alimony. From the judgment awarding permanent alimony, Malcolm filed a motion for new trial, which was denied by the trial court. Subsequently, he filed this appeal, in which he contends the trial court erred in finding that Lucy had insufficient means for her support and failing to require that she deplete her liquid assets prior to being entitled to permanent alimony.

DISCUSSION
Alimony after divorce is regulated by LSA-C.C. art. 112(A),[2] which provides in pertinent part:
(1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income....
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
(4) Permanent periodic alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage.
Permanent alimony is awarded to a former spouse in need, and it is limited to an amount sufficient for the former spouse's maintenance. Settle v. Settle, 25,643, p. 6 (La.App. 2nd Cir. 3/30/94), 635 So.2d 456, 460, writ denied, 94-1340 (La.9/16/94), 642 So.2d 194; see Loyacano v. Loyacano, 358 So.2d 304, 310 (La.1978), vacated on other grounds, sub nom. Loyacano v. LeBlanc, 440 U.S. 952, 99 S.Ct. 1488, 59 L.Ed.2d 766 (1979), reinstated, 375 So.2d 1314 (La.1979). The claimant spouse has the burden of proving insufficient means of support. Moreau v. Moreau, 553 So.2d 1064, 1065 (La.App. 3rd Cir.1989); see Frederic v. Frederic, 302 So.2d 903, 906 (La.1974). Until need has been demonstrated, the other spouse's financial means are irrelevant. Kean v. Kean, 388 So.2d 398, 401 (La.App. 1st Cir.1980). Thus, the initial inquiry is whether Lucy proved *1274 that she did not have sufficient means for her support.[3]See Wade v. Wade, 25,942, p. 4 (La.App. 2nd Cir. 8/17/94), 641 So.2d 989, 991.
"Means" include both income and property. Loyacano v. Loyacano, 358 So.2d at 310. "Support" means a sum sufficient for the claimant spouse's maintenance, which includes the allowable expenses for food, shelter, clothing, reasonable and necessary transportation or automobile expenses, medical and drug expenses, and the income tax liability generated by alimony payments. Wade v. Wade, 641 So.2d at 991. For purposes of determining alimony, the term "support" does not encompass miscellaneous expenses. Parker v. Parker, 93-817, p. 3 (La. App. 3rd Cir. 3/2/94), 634 So.2d 1231, 1233. In deciding entitlement and amount of alimony, the court should consider, among other things, the income, means and assets of the spouses; the financial obligations of the spouses, including their earning capacities; the time necessary for the recipient to acquire appropriate education, training or employment; and the health and age of the parties. Wade v. Wade, 641 So.2d at 991-92. The trial court has great discretion in fixing alimony awards, and such awards should not be disturbed absent a clear abuse of that discretion. Wade v. Wade, 641 So.2d at 992.
Lucy was employed on a part-time basis as a food service clerk at Franklinton Junior High School where Amy went to school. Testimony indicated that she worked only while Amy attended special-education classes at school. Her employment allowed her to bring Amy to school, assist her to her classroom, and take her home once she completed her school day. The rest of Lucy's time was spent caring for Amy, whom she testified was both mentally and orthopedically handicapped as a result of a childhood illness. Because of her disabilities, Amy, although fifteen years old at the time of the hearing, needed someone with her most, if not all, of the time to assist her with regular daily activities. In light of the evidence presented, the trial court found that Amy was mentally and physically handicapped, such disabilities may never resolve, and she may continue to need care and supervision for her entire life. These findings of fact were not challenged on appeal.
In the division of the community assets, Lucy received:
the former family home, which was free of debt,
¼ value in cash of the cattle belonging to the community,
½ of the money in certain accounts in Washington Bank and Trust Company,
½ of the money in a certain account in First State Bank and Trust Company,
the former family car, which was free of debt,
½ of certain stock of Spring Creek Milling Co-Op,
½ of certain stock of Mississippi Chemical Corporation (Malcolm's employer),
½ of the bonus received by Malcolm on August 15, 1994 (Lucy's portion equaling $1,521.26),
½ interest in the Mississippi Chemical Corporation Thrift and Pension Plan with the understanding that an offset would be computed in exchange for receipt of Malcolm's interest in the former family home, and
movables in her possession.
In connection with the cattle, Lucy received cash in excess of $15,000.00 from Malcolm. In exchange for her stock ownership, she accepted payment of $1,339.16. Her one-half portion of the money deposited with First State Bank and Trust Company was $51,000.00, and her one-half portion of the money deposited with Washington Bank and Trust Company was $43,801.00. Of this cash, Lucy placed $50,000.00 into a one-year certificate of deposit at Hibernia National Bank. At a rate of six percent, this certificate of deposit paid Lucy $249.57 per month. Lucy used this money for monthly expenses. She also deposited $54,000.00 into a savings account at Washington Bank and Trust Company (subsequently, Hancock Bank of Louisiana) which generated interest income of approximately $353.00 monthly. Lucy earns approximately $602.57 per month in interest income. Additionally, *1275 she earns $389.44 per month as a part-time food service clerk and after taxes takes home roughly $272.05 per month. Thus, her total monthly take home income is approximately $874.62.
The affidavit itemizing Lucy's income and expenses revealed monthly expenses totaling $1,612.11. The expenses are listed as follows:

1. Housing $141.00
2. Food and Household Supplies 400.00
3. Clothing 200.00
4. Transportation 200.00
5. Medical and Dental 27.80
6. Utilities (electricity, gas,
water and telephone) 200.00
7. Personal and Grooming 40.00
8. Amy's Life Insurance 7.00
9. House Insurance 80.00
10. Car Insurance 67.00
11. Car Note 149.31
12. Miscellaneous 100.00
 _________
 TOTAL $1,612.11

Because miscellaneous expenses should not be considered for purposes of support, her total monthly expenses should be reduced to $1,512.11. See Parker v. Parker, 634 So.2d at 1233; Kean v. Kean, 388 So.2d at 400.
Although the trial court recognized that Lucy had significant liquid assets, the court found it would be inappropriate under the circumstances of this case to require Lucy to fully deplete her liquid assets before she was allowed alimony. Furthermore, the trial court found that Lucy's earning capacity was limited by her experience and education, as well as her responsibilities as custodial parent of Amy. After considering Lucy's earning capacity, her maintenance needs, the investment potential of her assets, the current child support obligation, and Malcolm's income and expenses, the trial court awarded $350.00 per month in permanent alimony to Lucy. Malcolm contends the trial court erred in failing to require that Lucy deplete her liquid assets.
As previously noted, LSA-C.C. art. 112 requires that a spouse must be without sufficient means for support to be eligible for alimony after divorce. The jurisprudence has set forth many factors which should be taken into consideration in the determination of "sufficient means." Although "means" include both income and property, courts usually determine initially the monthly income to be attributed to the claimant spouse and compare this sum to the spouse's monthly expenses. If the income equals, or is greater than, the expenses, then no further inquiry should be necessary. However, if the expenses exceed the income, the court will need to decide to what extent the spouse should be made to deplete the property before being entitled to alimony.
On the question of what extent of asset depletion, if any, should be required of a spouse before he or she may receive alimony, it is impossible to say what relative weight must be given to any one factor in a particular case. Loyacano v. Loyacano, 358 So.2d at 311. A support claimant is not required to deplete assets entirely but may be required to deplete some assets to some extent. Settle v. Settle, 635 So.2d at 461. The court should apply a rule of reasonableness in light of the various factors to be considered and any other circumstance relevant to the litigation. Loyacano v. Loyacano, 358 So.2d at 311. For example, in determining the rate at which a spouse may be required to deplete his or her assets, it may be pertinent to consider the value and liquidity of the assets, the mental and physical health of the parties, their age and life expectancy, the parties' other financial responsibilities, the relative ability, education and work experience of the parties, and the potential effect of any contemplated depletion of assets upon the children of the marriage. Loyacano v. Loyacano, 358 So.2d at 311; Settle v. Settle, 635 So.2d at 461. The problem is of such a nature as to be insusceptible of solution by any exact formula or monetary index, and the court should proceed with great caution and due regard for the probable long range effects of any depletion contemplated. Loyacano v. Loyacano, 358 So.2d at 311.
Under the provisions of LSA-C.C. art. 112, it is within the discretion of the trial court to allow and fix the amount of alimony. Wade v. Wade, 641 So.2d at 992; Settle v. Settle, 635 So.2d at 460. The discretion *1276 granted by LSA-C.C. art. 112 means sound discretion, to be exercised by the trial court, not arbitrarily or wilfully, but with regard to what is just and proper under the facts of the case. See Loyacano v. Loyacano, 358 So.2d at 311.
From our review of the trial court's reasons for judgment, it is apparent that the court applied the rule of reasonableness for asset depletion discussed in Loyacano and considered the various factors presented in the jurisprudence before making the award of permanent alimony. Inherent in the award of alimony was a finding that Lucy was without sufficient means for her support, and it is this finding which must be scrutinized rather than the amount of alimony awarded.
According to the evidence of record in this case, Lucy received the former family home and car, which were valued in excess of $75,000.00 and were free of debt. She also received liquid assets having a value in excess of $100,000.00. Her monthly expenses totaled $1,512.11. Lucy's net monthly income was calculated to be approximately $874.62, and Amy received $589.00 monthly for her support. Clearly, Lucy's expenses exceeded her income, so the trial court properly considered her liquid assets as part of her means.
After a thorough review of the record, we cannot say that the trial court abused its discretion in weighing the evidence, applying the law, and awarding $350.00 per month in alimony to Lucy without first requiring her to completely deplete her assets. The court, in weighing the relevant factors based its conclusion, in part, on the following facts: "[Lucy] is a 40 year old woman with little education and works as a part-time cafeteria worker. She only recently obtained employment[,] having spent the last nine years caring for Amy[,] who is mentally and physically handicapped. As far as it is now known, this child's disabilities may never be completely corrected and she may need care and supervision throughout her life." Furthermore, a significant portion of Lucy's monthly income, approximately $602.57 per month, was interest income she received from her certificate of deposit and savings account. If she is required to deplete these assets, then her monthly income will be greatly reduced.
Malcolm, however, as an employee of Mississippi Chemical Corp., earns wages in the amount of $4,745.00 per month, and brings home after payroll deductions (which deductions include his contribution to a 401K retirement plan) approximately $3,204.73. Malcolm's affidavit also indicates that his employer reimburses him for his transportation expenses, gives him a meal allowance and provides for his health insurance coverage. He also owns livestock, machinery, stocks and bonds, savings accounts and certificates of deposit, and receives additional monthly income in connection with his cattle ownership.
All of the foregoing factors support the trial court's conclusion that Lucy was entitled to receive alimony from Malcolm. Thus, we cannot say that the trial court abused its vast discretion in awarding Lucy $350.00 per month as permanent alimony.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Malcolm L. Wascom, Jr.
AFFIRMED.
PARRO, J., dissents and assigns reasons.
PARRO, Judge, dissenting.
Pursuant to the provisions of LSA-C.C. art. 112(A), as applicable to this case, a claimant spouse is entitled to an award of permanent periodic alimony only when he or she has insufficient means for support. Thus, the majority properly recognizes that initially, we are required to determine whether Lucy F. Wascom ("Lucy") proved that she did not have sufficient means for her support. See Wade v. Wade, 25,942 (La.App. 2nd Cir. 8/17/94), 641 So.2d 989, 991.
In determining whether Lucy's means are sufficient, the court must begin by examining Lucy's expenses and income. Lucy's monthly expenses totaled $1,512.11, but some of these expenses admittedly inured to the benefit of her daughter, Amy L. Wascom. Her *1277 total net monthly income was calculated to be approximately $875, and Lucy received $589 monthly for Amy's support. Clearly, Lucy's expenses exceeded her income. However, by this showing, Lucy did not automatically meet her burden of proving insufficient means of support. It is not until we consider her other assets that this determination can be made.
As a result of the division of the community assets, Lucy owned the former family home and car, which were valued in excess of $75,000 and were free of debt. She also received liquid assets having a value in excess of $100,000. After considering her ownership of these assets, we must now decide if Lucy proved that she was without sufficient means for support.
In Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950), the supreme court held that $20,000 in liquid assets will defeat a claim for permanent alimony. See Paddison v. Paddison, 255 So.2d 504 (La.App. 4th Cir.1971). Although this decision was rendered many years ago, and $20,000 in liquid assets in today's world may no longer be sufficient to defeat a claim for alimony, liquid assets in excess of $100,000 should surely be enough to defeat a claim for permanent alimony, even in 1998. See White v. White, 356 So.2d 1023, 1024 (La.App. 1st Cir.1977). The trial court's implied finding to the contrary was not supported by the record and was clearly wrong. To find otherwise would considerably expand the meaning of the term "insufficient means of support."
Notedly, the trial court properly considered Lucy's liquid assets as part of her means. However, the court stated it did "not believe it [was] appropriate to require her to completely deplete these assets to support herself."
Although Lucy is not required to sell her home or to deplete her liquid assets entirely before she may be entitled to alimony, I believe the trial court erred in not expressly requiring a certain amount of asset depletion before Lucy would be entitled to permanent alimony. Therefore, it is my opinion the trial court abused its discretion in awarding any permanent alimony at this time. If her liquid assets are sufficiently depleted in the future, Lucy may be entitled to permanent alimony at that time. However, until such time that Lucy can prove she has insufficient means of support, Malcolm L. Wascom, Jr.'s means are irrelevant. See Kean v. Kean, 388 So.2d 398, 401 (La.App. 1st Cir.1980).
For these reasons, I would reverse and vacate the judgment of the trial court, which awarded Lucy permanent alimony. Accordingly, I respectfully dissent.
NOTES
[1] This child support award was subsequently increased to $589.00 per month. Malcolm was also required to deposit 13.6 percent of his annual bonus into a medical fund which had been established for Amy's medical needs.
[2] This article was amended by 1997 La. Act No. 1078, § 1. The 1997 amendment is not applicable to this case since it did not become effective until January 1, 1998, and does not apply to actions commenced before that date. All further references will be to the article prior to its amendment.
[3] The issue of Lucy's fault is not before us on appeal.