|,SUS AN M. CHEHARDY, Judge.
Yvette Musacchia, plaintiff, and Richard Musacchia, defendant, were divorced by judgment rendered on September 16,1997. On January 21, 1998 Yvette Musacchia filed a petition for partition of the community property and to determine incidental matters.[1] Chief among the property to be partitioned were the proceeds of a fire insurance claim for the destruction of the parties’ residence by fire on September 30, 1996 (prior to the filing of the petition for divorce). The insurance carrier deposited the policy proceeds in the registry of court after the Musacehias settled their claim for $15,000.00 on June 3,1997.
By judgment rendered on October 13, 1998, Yvette Musacchia was granted sole care, custody and control of the parties’ two minor children. Richard Musacchia was ordered to pay child support in the amount of $208.00 per month retroactive to January 21, 1998. The Clerk of Court was ordered to pay Yvette Musacchia, from the funds held in the registry of the court, the amount of | s$2,080.00 for child support ar-rearages owed by Richard Musacchia. The Clerk of Court also was ordered to pay from the funds in the court registry future monthly child support payments due from Richard Musacchia, on a monthly basis. The judgment also ordered that the amounts so withdrawn from the funds in the court registry be taxed against Richard Musacchia in the community property partition.
On October 14, 1998 Richard Musacchia filed a motion to revise the child support award on the ground that the hearing officer, whose recommendation the court had adopted, erred in calculating the figures on which the defendant’s share of the support obligation was based.
The matter came for trial on May 28, 1999.[2] On August 23, 1999 the district *1160 court rendered judgment. The following rulings are the subject of this appeal:
1. The court ordered that immovable property owned by the parties in Tangipahoa Parish and St. John the Baptist Parish be sold, with each party to share equally in the proceeds, but that Richard Musacchia’s portion be placed in the registry of the court for payment of his child support obligations in the amount of $208.00 per month, plus 38% of unpaid medical expenses.
2. The court ordered that insurance proceeds in the amount of $4,500.00 in Richard Musacchia’s possession be deemed his separate property, but that the $14,300.00 in the registry of court from the fire insurance settlement be deemed to be the separate property of Yvette Musacchia. The court stated in the judgment, “Based on the evidence, the Court believes that Mr. |4Musacchia had removed his personal belongings from the home prior to the fire and that the fire consumed the separate property of Mrs. Musacchia.”
Other dispositions made in the judgment are not at issue on this appeal.
Richard Musacchia filed a motion for new trial, which was denied, and thereafter he filed this appeal.[3] He contests the trial court’s award of child support payments beyond the amounts of Social Security benefits currently being paid to Yvette Musacchia on the childrens’ behalf. He also disputes the disposition of the insurance proceeds in the registry of the court.
Appellant contends the trial court erred in the following respects: (1) awarding child support in excess of the amount received directly by appellee from the Social Security Administration due to appellant’s disability; (2) awarding the insurance proceeds for fire damage to the contents of the house to appellee as her separate property, when the fire occurred prior to the institution of divorce proceedings; (3) allowing appellee to withdraw money for child support from the proceeds in the registry of court; and (4) requiring appellant to deposit in the registry of the court all of the proceeds from the partition of the community to secure payment of child support obligations yet to be incurred.
SOCIAL SECURITY CREDIT
Appellant asserts that appellee receives Social Security benefits for the children, based on appellant’s disability, in the amount of $316.00 per month. He contends it was error for the trial court to award appellee $208.00 child support per month in addition to the Social Security payments. He contends that he is entitled to an offset of his child support obligations by the amount of the Social | .¡Security payments, which would result in his owing nothing because the monthly Social Security benefits are greater than the amount for which he is cast in child support.
He relies on Faul v. Faul, 548 So.2d 957 (La.App. 3 Cir.1989); McCloud v. McCloud, 544 So.2d 764 (La.App. 3 Cir.1989); and Folds v. Lebert, 420 So.2d 715 (La.App. 4 Cir.1982). Those cases held that where Social Security payments for a child are based on the obligor parent’s disability, the amount of child support directly payable by the obligor parent should be reduced by the amount of the Social Security benefits.
We find no merit to his arguments, first because his appeal of the ruling is untimely. The ruling was first issued in the judgment of October 13, 1999. Appeals from judgments awarding support can be taken only within 30 days from the applicable date provided in La. C.C.P. Article 2087(A)(1)-(3). La. C.C.P. Arts. 3943, 3942. Instead of appealing the judgment, Rich *1161 ard Musacchia filed a motion to revise the child support award.
Further, even if we were to consider the merits of this argument, we note that evidence of the Social Security payments was before the hearing officer (and hence the district court) at the time the hearing officer made the recommendation setting the amount at $208.00. Appellant attached to his answer to appellee’s divorce petition a copy of a document from the Social Security Administration which indicates that beginning on February 3, 1997 payments were being made on behalf of each child in the amount of $158.00 per month. The Hearing Officer’s Recommendations Form, signed on October 7, 1998, indicates the hearing officer recommended initial settings of child support in the amount of $208.00 effective |fiJanuary 21, 1998. The amount is accompanied by a notation ‘““Interim recommendation w/o prejudice”. However, the record contains no testimony or documents setting out the parties’ respective income and expenses, except for a copy of appellee’s financial information submitted in connection with her application for pauper status. Accordingly, there is nothing on the record for us to review regarding the setting of the child support amounts.
Finally, modification of a child support award must be based on a showing of a change in circumstances. La. C.C. Art. 142; La. R.S. 9:311. That is not applicable here.
The trial court has great discretion in granting or modifying awards of child support; its judgment will not be disturbed unless there is a showing of a clear abuse of that discretion. Widman v. Widman, 93-613 (La.App. 3 Cir. 2/2/94), 631 So.2d 689, 692; see also, Gibson v. Gibson, 592 So.2d 855 (La.App. 3 Cir.1991).
CLASSIFICATION OF FIRE INSURANCE PROCEEDS
Appellant contends the trial court erred in finding that the insurance proceeds in the registry of the court, which were for the destroyed contents of the burned house, were the separate property of appellee. Appellant contends that the contents in the house at the time of the fire were his separate property because they were purchased with proceeds of a worker’s compensation settlement he had received. Appellant did not testify at trial because he was not present due to his incarceration in a state correctional facility. His sister, Linda Manieri, and her husband, Wayne Manieri, testified that they lived across the street from the property and that it was appellant’s furniture in the house when the fire occurred. j7Mr. Mani-eri testified the property had been purchased by appellant with proceeds from a worker’s compensation settlement.
In opposition, appellee relies on her testimony at trial that prior to the fire appellant had come to the house, escorted by law enforcement officials (presumably due to the fact that he was subject to a restraining order obtained by appellee), and had removed “one-half of everything, including towels, medicines, silverware and all movable things.” In essence, therefore, she is arguing that appellant had already received his one-half of the community movables before the fire.[4]
“Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.” La. C.C. Art. 2340. The presumption may be rebutted only by clear and convincing evidence. Succession of Smith, 247 La. 921, 175 So.2d 269, 273 (1965). The question before us, however, is not whether the property that was burned in the fire was community-owned-that is unchallenged-but whether the parties (who had already physically separated) had already conduct *1162 ed a de facto partition of the household movables. The trial judge, obviously, believed the testimony of appellee that such a de facto partition had occurred. We find no basis in the record to disturb that credibility determination by the trier of fact. Accordingly, we find no merit to this assignment.
REIMBURSEMENT FOR CHILD SUPPORT ALREADY PAID
Appellant contests the trial court’s order directing him to reimburse appellee $4,160.00 already paid to her as child support from the funds in the court registry. J_gThe court ordered the reimbursement based on its finding that the funds deposited by the insurer should be considered appellee’s separate property. Considering our conclusion regarding Issue (2) above, we find no error in that ruling.
USE OF PARTITION PROCEEDS TO PAY FUTURE CHILD SUPPORT
Appellant’s fourth and last assignment is that the trial court erred in ordering that any further funds due him after partition (comprising proceeds from sale of the immovable property) be deposited into the court registry to pay future child support. He argues there is no legal authority for the court’s action.
In opposition, appellee cites no statutory or jurisprudential authority for the court’s action, but argues that the trial court was acting in the best interest of the children, asserting, “To date, appellant is approximately $7,696.00 in arrearage in his child support obligation.” She relies on a post-appeal judgment on a rule for contempt. An appellate court may not consider documents which are not part of the record on appeal, however.
We find no basis for the withholding of funds prospectively due a party in anticipation that the party will default on future payments of child support. At the time the judgment herein was rendered, the property from which the funds contemplated were to be derived had not yet been sold. Further, appellant had not yet had the chance to default on his child support payments. Finally, a party may not recover past-due child support until it has been determined to be in arrears and the ar-rearages have been made executory. La. C.C.P. Art. 3946.
Although we understand that the trial court sought to act in the best interest of the children by preserving a fund for payment of future child support, we cannot uphold such a ruling without a valid legal basis. Appellee’s remedy is toj^seek to sequester in proper legal form any available assets of appellant following appropriate proceedings to make past-due child support executory.
Accordingly, this portion of the judgment must be reversed.
DECREE
For the foregoing reasons, the judgment of the trial court is REVERSED insofar as it directed that proceeds due appellant from partition sales of community property be placed in the registry of court for payment of future child support. In all other respects the judgment is affirmed. Appellant is cast for all costs of this appeal.

AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. Among these was a paternity test to determine paternity of the parties' youngest child. The test established the child was fathered by Richard Musacchia.

. Richard Musacchia was then and still is incarcerated in a state correctional center.

. The record does not contain a written judgment denying the new trial motion, but a transcript of a hearing on October 28, 1999 establishes that the court in fact denied the motion.

. She also testified that the parties shared equally the settlement made for the value of die dwelling ($18,400.00).